918 F.2d 187
 37 Cont.Cas.Fed. (CCH) 76,061
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CARL GARRIS AND SON INC., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 90-1215.
 United States Court of Appeals, Federal Circuit.
 Oct. 24, 1990.
 
 Before MARKEY, LOURIE and CLEVENGER, Circuit Judges.
 CLEVENGER, Circuit Judge.
 
 DECISION
 
 1
 Carl Garris and Son Inc. (Garris) appeals the decision of the Armed Services Board of Contract Appeals (Board) No. 36614 denying its appeal of the contracting officer's denial of its claim for $225,434.20, a time extension of 102 days, and attorney's fees and costs in connection with alleged extra roofing work that Garris performed under Contract No. N62467-85-C-0576 for exterior repairs of housing at a naval weapons station.
 
 
 2
 In accordance with a stipulation of the parties, the Board decided only entitlement. Because the Board erroneously concluded that the contract was patently ambiguous, we reverse its decision and remand for a determination as to the issue of quantum and any other issues remaining in the case.
 
 OPINION
 
 3
 The parties dispute the extent of reroofing required by the contract in connection with the renovation of Type 74 and 75I buildings. The Government contends that the contract required total reroofing, while Garris argues that reroofing was required only where the roof was affected by new work. Because neither interpretation gives meaning to every provision, the Board concluded that the contract was patently ambiguous.
 
 I. The Decision of the Board
 
 4
 The Board concluded that Garris' "interpretation ignores the drawing indications, by arrows, that new roofing was required for all of the buildings in question ... and Keynote 2.2 which required the removal of all existing shingles and felt underlayment" while the Government's interpretation "disregards paragraph 2.1.3 of Section 02050 of the specifications and Keynotes 7.1 and 7.2 ... which appear to require new felt and shingles only on eave extensions and in those parts of the existing roofs where plywood sheathing was damaged or rotted." Faced with this conflict, the Board sua sponte concluded that "[t]he contract provisions as to reroofing were glaringly conflicting, confusing, and ambiguous, and neither party's interpretation could possibly give meaning to all of them."
 
 
 5
 The Board held that Garris should have recognized a "patent ambiguity on the face of the contract documents which placed it under an affirmative obligation to seek a clarification thereof prior to submitting its bid."
 
 
 6
 Because Garris failed to seek clarification of what the Board viewed as a patent ambiguity in the contract, the Board denied Garris' appeal.
 
 II. Lack of Patent Ambiguity in the Contract
 
 7
 The Board's conclusions of law are freely reviewable by this Court. 41 U.S.C. Sec. 609(b) (1988); Systems Technology Assocs. v. United States, 699 F.2d 1383, 1386 (Fed.Cir.1983). We review de novo the Board's conclusion that the contract was patently ambiguous. See B.D. Click Co. v. United States, 614 F.2d 748, 752 (Ct.Cl.1980) (contract interpretation is a question of law).
 
 
 8
 The Board considered the contract patently ambiguous because neither Garris' nor the Government's interpretation gives meaning to every provision. However, in order to rise to the level of patent ambiguity, the internal inconsistency must be blatant and significant, "not subtle, hidden or minor." S.O.G. of Ark. v. United States, 546 F.2d 367, 370 (Ct.Cl.1976) (patent ambiguity found where contractor "should have recognized at once that there would be a grave problem" created by an internal inconsistency).
 
 
 9
 What constitutes a patent ambiguity "cannot be defined generally, but on an ad hoc basis of looking to what a reasonable man would find to be patent and glaring." Max Drill, Inc. v. United States, 427 F.2d 1233, 1244 (Ct.Cl.1970). In the present case, even qualified and experienced Government employees did not appreciate the ambiguity that the Board considered "glaringly conflicting, confusing, and ambiguous." Under these circumstances, we must conclude that no patent ambiguity exists.
 
 
 10
 The testimony of the Government's own representatives compels this conclusion. At a hearing before Judge Axelman, the testimony of Sandy White (White), Lisa Engert (Engert), Leslie Black (Black), and Andrew Demos (Demos) demonstrated that the ambiguity was not patent.
 
 
 11
 White is a Government representative who received pre-bid inquiries regarding the contract. She testified that she referred a pre-bid inquiry to Engert, the Government engineer in charge of the project. The inquiry was from John Walker (Walker), a prospective contractor who requested clarification as to whether the contract required total reroofing of Type 74 and 75I buildings. Walker's inquiry embraced the precise issue that gave rise to the present dispute.
 
 
 12
 White testified that Engert's answer to Walker's inquiry was "[r]ead sub-system key notes for units 74/75I." Although the communications between Walker, White and Engert were oral, they were memorialized by White in a contemporaneous memorandum.
 
 
 13
 White's testimony supports Engert's testimony. Engert testified that it was her responsibility to determine whether total reroofing was required or whether partial reroofing was required under the contract. She testified that her response to Walker's pre-bid inquiry concerning the required extent of reroofing was "[r]ead the sub-system key notes."
 
 
 14
 Engert testified that she read the keynotes. Significantly, Walker's inquiry focused Engert on the conflicting keynotes considered by the Board to constitute a glaringly patent ambiguity. Had Engert detected the ambiguity, her direction to "read the contract" would not have been a responsible answer to the inquiry. Nonetheless, the Board found that Garris "should have recognized the patent ambiguity on the face of the contract ... prior to submitting its bid." We disagree where, as here, even the Government's own engineer failed to detect the alleged patent ambiguity.
 
 
 15
 The Government called Black, the architect in charge of the project and an expert in the field of architecture. When asked what would have been his answer to Walker's inquiry, Black responded that he would have said "Read the documents." Black testified that a contractor should have been able to look at his plans and specifications and have a clear understanding of what he was supposed to do. In other words, the very architect who drafted the drawings at issue believed his specifications were unambiguous and that a contractor could justifiably rely on them without seeking any clarification. Thus, both the Government architect and the Government engineer testified that a direction to "read the contract" was the only clarification necessary to answer an inquiry regarding the required extent of reroofing.
 
 
 16
 Finally, the Government called Demos as a witness. Demos has been employed by the Government contracts department for nineteen years. During the last five years of his employment, Demos served in the highest level that is assigned to any of the contracting officers within the engineering field divisions. Demos testified that he was about two levels above the contracting officer assigned to the contract.
 
 
 17
 When questioned concerning the plans and specifications as they relate to the reroofing requirements, Demos testified that "[t]here is no ambiguity." In light of the testimony of the Government's witnesses, the ambiguity in this contract is hardly a matter of black and white, as one expects in the case of patent ambiguity, but is rather in the shades of gray associated with latent ambiguity.
 
 
 18
 The Board thus erred as a matter of law when it concluded that the conflicting provisions of the contract render it patently ambiguous. We conclude that the contract contains no conflict that "a reasonable man would find to be patent and glaring." Max Drill, 427 F.2d at 1244.
 
 III. Reasonableness of Garris' Interpretation
 
 19
 "If the court finds that a patent ambiguity did not exist, then the reasonableness of the contractor's interpretation becomes crucial in deciding whether the normal contra proferentem rule applies." Newsom v. United States, 676 F.2d 647, 650 n. 11 (Ct.Cl.1982). See Fort Vancouver Plywood Co. v. United States, 860 F.2d 409, 414 (Fed.Cir.1988) ("Under the rule of contra proferentum, the contract is construed against its drafter if the interpretation advanced by the non-drafter is reasonable.")
 
 
 20
 Garris interpreted the contract as requiring partial rather than total reroofing. Garris' interpretation is supported by Keynote 7.1 from the drawings regarding roofing, which provides in relevant part: "Replace damaged and/or rotted plywood underlayment.... Reroof with # 15 felt and shingles." Garris interpreted this provision as requiring reroofing only in those areas that were damaged or rotted. Similarly, Keynote 7.2 from the drawings regarding roofing provides, in relevant part: "Match existing roofing with new 1/2" plywood roof sheathing and # 15 felt underlayment." If the contract required total reroofing, there would have been no need to match the new roof sheathing to the existing roofing. Nor was total reroofing required in the Demolition and Removal section 02050. Moreover, Keynote 2.1.3 provided in relevant part: "Roofing: Remove roofing to effect the connections with new flashing or roofing," which contemplates a partial removal of existing roofing.
 
 
 21
 We conclude, therefore, that Garris reasonably interpreted the contract as requiring only partial reroofing. Garris' interpretation need only fall within the zone of reasonableness; it need not be preferable to the Government's interpretation. See City Electric, Inc., 82-2 BCA (CCH) p 16,057, at 79,661 (ASBCA 1982) (contractor's interpretation must be within zone of reasonableness but need not be the best interpretation); see also Swinerton & Walberg Co., 75-1 BCA (CCH) p 11,052, at 52,592 (ASBCA 1975) (even if the drafter's interpretation is "the best and preferred one," the non-drafter's interpretation prevails if it is within zone of reasonableness).
 
 
 22
 The Board determined that Garris relied on its own interpretation of the contract when it prepared its bid. Therefore, Garris' interpretation of the contract should have been adopted by the Board. See Randolph Engineering Co. v. United States, 367 F.2d 425 (Ct.Cl.1966) (contractor's interpretation of Government-drawn agreement will be adopted if contractor actually and reasonably relied on that interpretation when it entered into the contract).
 
 
 23
 Accordingly, the decision of the Board is reversed and the case is remanded for proceedings consistent with this decision.