Whaley, Chief Justice,
delivered the opinion of the court:
This action involves the construction of a contract entered into between the plaintiff and the defendant on the 19th day *596 of September 1931, whereby the plaintiff agreed to “furnish all labor and materials, and perform all work required for construction of foundations, etc., for the U. S. Department of Justice Building, Washington, D. C.,” in the sum of $949,000 in accordance with the specifications, schedules and drawings attached to the contract.
When the plaintiff made its estimate on which its bid was based it had before it a copy of the specifications and drawings. Section 114 of the specifications provided:
Borings have been made at various points on the site to ascertain the variations in material strata and the depths at which they are encountered. These results are indicated on the drawings.
The drawings on which plaintiff based its estimate and the specifications furnished by the defendant showed the average length of the piles would be 27 feet 6 inches. It was on this estimated length of piling that plaintiff made its bid.
Section 182 of the specifications provided that, where precast piles are used, the contractor should provide 15 test piles to predetermine the length of the piles required to secure the specified bearing in the various areas of the work.
The plaintiff, in carrying out this provision of the specifications, drove 125 test piles and, as a result of these tests, it was revealed that the estimated length of 27 feet 6 inches was grossly in error and this was immediately brought to the attention of the defendant’s construction engineer who was detailed by the Supervising Architect of the Treasury Department to supervise the work. It was also discovered during these tests that no penetration for piles could be secured below the bottom of the foundations under the boiler room. The piling under this boiler-room section had to be eliminated.
The plans provided for piles under pits for the elevators, sumps, and other places. The pits were so low that piles of two feet in length could only be used sometimes and it was determined by the contracting officer to omit piling in the pits and substitute lowered footings.
The construction engineer admits that the conditions revealed at the site as the result of the test piles could not have been foreseen and were only disclosed by the actual driving *597 of the piles and the special corroborative borings. The conditions discovered as a result of these test borings were so radically different from those depicted on the drawings that only one pile of the estimated length, 27 feet 6 inches, was driven. Only 55.5% of the total footage was driven and of the estimated number of piles (10,538) 1,506 were omitted.
Sections 192 and 193 of the specifications made provision for adjustment of the contract price upon determination of the actual length of the piles. The sections read as follows:
192. It is estimated that the average length of the piles will be twenty-seven feet six inches (27' 6") in place, measured from the tip to the cut-off lines indicated on the drawings. Should the aggregate length of the total number of piles driven, where so measured, be greater or less than aggregate length estimated, adjustment will be made in the contract price on the following basis:
193. $1.85 per linear foot additional to the contract price for the number of feet in excess of the aggregate linear feet estimated, or $1.25 per linear foot deduction from the contract price for the number of feet less than the aggregate linear feet estimated. The cost or credit for any increase to or decrease from the total number of piles shown on the drawings shall be at these unit prices per linear foot.
The contracting officer admits that these sections are inserted to cover a reasonable variation and not an unusual and extraordinary condition. The conditions encountered were grossly in variance with the drawings and specifications and resulted in a high overrun which was not anticipated by either party when the drawings and specifications were made by the defendant and the bid entered by the plaintiff.
Article 4 of the contract provides for changed conditions, and reads as follows:
ÁRticle 4. Changed conditions. — Should the contractor encounter, or the Government discover, during the progress of the work, subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, the attention of the contracting officer shall be called immediately to such conditions before they are disturbed. The contracting officer shall thereupon promptly investi *598 gate the conditions, and if he finds that they materially differ from those shown on the drawings or indicated in the specifications, he shall at once, with the written approval of the head of the department or his representative, make such changes in the drawings and (or) specifications as he may find necessary, and any increase or decrease of cost and (or) difference in time resulting from such changes shall be adjusted as provided in Article 3 of this contract.
Article 3 of the contract provides for changes and reads as follows:
ARticle 3. Changes. — The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and (or) specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or Iris duly authorized representative. Any claim for adjustment under this article must be asserted within ten days from the date the change is ordered, unless the contracting officer shall for proper cause extend such time, and if the parties cannot agree upon the adjustment the dispute shall be determined as provided in Article 15 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the prosecution of the work so changed.
When the condition encountered was called to the attention of the contracting officer, he extended the time in which a claim could be made and, when the claim was submitted by the contractor for an equitable adjustment under Article 3 of the contract instead of under Section 193 of the specifications, the matter was referred to the Comptroller General for decision with a statement of facts showing unforeseen conditions as a result of the tests and with a recommendation for equitable adjustment. The Comptroller General held that Section 193 of the specifications governed and so informed the contracting officer. As a result of this decision the plaintiff had deducted from his contract price the sum *599 of $161,266.25, whereas, if the plaintiff had had an equitable adjustment, there would have been only a deduction of $93,-089.27 for the footages of piling not driven or a difference of $68,176.98.
In our opinion, the contractor was entitled to have the contracting officer construe the contract and arrive at a determination of the facts as found by him after the unforeseen conditions had been brought to his attention by the plaintiff. There is no provision in the contract allowing the Comptroller General the right to construe the rights of the parties under the contract either in fact or law.
The contracting officer made a finding of fact to the Comptroller General in which he held the conditions were in variance and radically different from those on which the plans were drawn and the specifications made and on which the plaintiff had based its bid. Under these circumstances, under the provisions of the contract article 3 applies and not the provisions of the specifications under sections 192 and 193.
In the case of Hollerbach v. United States, 233 U. S. 165, 171, the court held:
A government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument.
See The Rust Engineering Co. v. United States, 86 C. Cls. 461.
The work was completed by the plaintiff and accepted but there was deducted as a credit to the Government the sum of $161,266.25, according to the interpretation placed upon the contract by the Comptroller General. This was manifestly a wrong construction of the contract. An equitable adjustment would have resulted in a deduction of only $93,089.27 instead of $161,266.25.
Plaintiff is entitled to recover the sum of $68,176.98. It is so ordered.
Williams, Judge; LittletoN, Judge; and GreeN, Judge, concur.
WhitakeR, Judge, took no part in the decision of this case.