JONES, Judge.,
delivered the opinion of the court:
On January 12,1933, the plaintiffs entered into a contract with the defendant, by the terms of which plaintiff agreed to furnish all labor and materials and perform all work required for wrecking and removing old buildings and constructing 17 new buildings for the Veterans’ Administration at San Francisco, California, and for the reconditioning and rebuilding of two other structures, including fences, gates, roads, walks, grading and drainage. It was known as the Fort Miley project. The consideration was to be $898,810. The date fixed for the completion of the contract was April 4, 1934.
During the progress of the work numerous change orders were issued by the contracting officer pursuant to the provisions of article 3 of the contract. These change orders had the effect of increasing the contract price to $928,976.65 and of postponing the date of completion to June 27, 1934.
Most of these changes were adjusted both as to time for completion and increase or decrease in cost in the manner specified in the various provisions of the contract.
The substantial features of this case turn on two propositions :
1. Plaintiffs’ claim for damages because of defendant’s order to stop the foundation work on Building No. 2 pending a decision regarding the necessary alterations in the specifications.
2. Plaintiffs’ claim for damages caused by the defendant’s order to stop work on Building No. 1 pending a decision as to whether such building should be eliminated entirely from the contract.
The first of these claims is based on the fact that while the excavation work was in progress for the foundation of the Main Building No. 2, what was apparently a dike of rock was encountered extending upward in the area designed for the sub-basement, which rock had escaped previous exploratory borings for the Government. The building had been designed to rest on hard blue clay through which the unexpected dike projected. Defendant’s superintendent of construction on March 21, 1933, ordered excavation in the extreme east end of the east wing stopped in *122 order that the proper investigation might be made and the footings redesigned. Later, on April 25, 1933, foundation work was ordered discontinued on other portions of the building because seven-day cylinder tests of samples of the concrete being poured did not come up to the standard required. However, core borings which were then made indicated that the concrete was satisfactory. The supposed dike or pinnacle of rock in the center .of the building required detailed investigation and study and was finally determined to be a large boulder entirely submerged in blue clay. Load-bearing tests in addition to those already made were found necessary and the plaintiffs were given this work to do by separate' contract. On July 21, 1933, the contracting officer authorized the plaintiffs to resume work on the foundation of Building No. 2.
In its proposal the contractor reserved claim for damages for delay occasioned by inability to work while the changes w.ere under consideration. These claims were duly presented.
Defendant claims that under the terms of the contract no provision was made for the payment of damages by the Government caused by delay and that in the absence of such a provision payment of the amount asked in addition to the contract price was unauthorized. This is true as to ordinary, changes, but where extra costs are incurred by contractor due to unforeseen or unknown conditions in con-, struction or excavating foundations for buildings, the changes thereby required are not necessarily reasonable changes contemplated in the contract. Under the previous decisions of the court the plaintiffs may recover the actual costs thus incurred. Siesel Co. v. United States, 90 C. Cls. 582; Rust Engineering Co. v. United States, 86 C. Cls., 461, 475. From the latter decision we quote as follows:
The changes made necessary by reason of the conditions encountered in excavating for the foundation of the building, were not reasonable changes within the scope of the drawings and specifications as contemplated in Art. 3 of the contract, but represented important changes based upon changed conditions which were unknown and materially different from those shown on. *123 the drawings or indicated in! the specifications. Such changes were, therefore, clearly not within the contemplation of either party to the contract at the time it was made. On the facts disclosed plaintiff is entitled to recover on this item.
We find as a fact that the changes made necessary by reason of the conditions encountered in! excavating for the foundation of Building No. 2 were not reasonable changes within the scope of the terms of the contract and specifications, but were important changes that were not within the contemplation' of either party to the contract at the time it was made.
As to the second proposition: On May 8, 1933, the contractor received from the contracting officer the following telegram:
Reference contract construction San Francisco California discontinue immediately work on administration building number one (stop) prepare and submit through Superintendent Radcliffe proposal for omission of this building from your contract.
The contractor complied and submitted a proposal for omission of Building No. 1 and Corridors 1-2.
The omission of the building as a measure of economy was under consideration by the Government for some time.
On July 27, 1933, the contracting officer sent the contractor the following telegram:
Reference our wire May eighth to discontinue immediately work on Administration Building Number One Fort Miley California stop it ,has been decided not to omit this building proceed with work in accordance with original plans stop request acknowledgment of this order to proceed.
Manifestly this delay was not in the contemplation of the parties at the time of the making of the contract. It was done pursuant to a policy-of economy which the defendant determined upon after the making of the contract. It was not the fault of the contractor and he had no part in. such determination. He should be permitted to recover the actual and necessary costs proximately flowing from the delay that was occasioned by this action on the part of the defendant.
*124 On July 19, 1934, the contractor presented to the contracting officer a revised consolidated claim totaling $58,-928.52 which he asserted was the direct result of the delays occasioned by the defendant in the construction of Buildings 1, 2, 3, and 7. The contracting officer declined to consider this claim on the ground that the contract did not authorize damages for delays. His action was approved by the Director of the Veterans’ Administration.
Article 3 of the contract provides for changes and reads as follows:
The contracting officer may at any time, by a written order, and without notice to the sureties, make changes in the drawings and (or) specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. • No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or his duly authorized representative. Any claim for adjustment under this article must be asserted within ten days from the date the change is ordered, unless the contracting officer shall for proper cause extend such time, and if the parties can not agree upon the adjustment the dispute shall be determined as provided in Article 15 hereof. But nothing provided in this Article shall excuse the contractor from proceeding with the prosecution of the work so changed.
Article 4 of the contract provides for changed conditions and reads as follows:
Should the contractor encounter, or the Government discover, during the progress of the work, subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, the attention of the contracting officer shall be called immediately to such conditions before they are disturbed. The contracting officer shall thereupon promptly investigate the conditions, and if he finds that they materially differ from those shown on the drawings or indicated in the specifications, he shall at once, with the written approval of the head of the department or his representative, make such changes in *125 tbe drawings and (or) specifications as he may find necessary, and any increase or decrease of cost and (or) difference in time resulting from such changes shall be adjusted as provided in Article 3 of this contract.
Article 15 of the contract provides that all the disputes concerning questions of fact arising under the contract should be decided by the contracting officer, subject to written appeal by the contractor within thirty days to the head of the department concerned.
The time for completion of the contract was extended but the facts in connection with the claim for damages were not passed upon by the contracting officer. Plaintiffs were entitled to have action taken on the merits of their claim for the extra costs incurred. Siesel Co. v. United States, supra.
Certainly plaintiffs should be entitled to “equitable adjustment” in a case where as in Main Building No. 2 the foundation placement was so difficult and different from that contemplated that the. entire building had to be swung around and the contracting officer found it necessary to order work suspended for several months.
It is unthinkable that the plaintiffs should suffer the entire damages brought about by the stop order on the Main Administration Building No. 1 when such order was issued by the defendant wholly for its own benefit.
It has been rather difficult to segregate the items of cost and to determine which were actually expended in connection with Buildings 1 and 2. The record is voluminous. A number of the change orders were the natural ones usual in construction of this kind. We have eliminated the items that are linked to these changes.
The testimony shows that Buildings 1 and 2 constituted more than one-half of the total work involved in the contract. We have included the items of actual expense which the evidence clearly shows were attached to these two buildings and which were made necessary because of the delay in the construction of each of such buildings. We have eliminated items which the testimony shows to be in doubt.
It has been necessary to apportion some of the items of cost which attached to the entire contract and to allot the proper part of these items to Buildings 1 and 2 and work dependent thereon and incident thereto.
*126 As to the general office overhead, the evidence shows that the plaintiff company engaged in other construction work at the time the contract work involved in this litigation was being done. These, however, were comparatively small contracts and the total of these outside contracts amounted to' only about $500,000 during this period. This appeared to-be about the usual amount of outstanding contracts.
We have, therefore, apportioned the general office overhead and allotted the proper part of same to this particular-contract. In turn, we have allotted the proper part of the-net result thus obtained to the unforeseen delay in connection with the construction of Buildings 1 and 2.
The amount of all these items has been limited to the-period of unforeseen and uncontemplated delay in connection with Buildings 1 and 2. The actual expenditures, directly resulting from the stop orders on Buildings 1 and 2 and work dependent thereon or incident thereto totalled $25,142.42.
Plaintiff also claims damages for delay in payment. On October 11, 1934, the contractor forwarded to the contracting officer a claim against the United States for the balance-due on the contract price as modified by the change orders..
It was necessary to consider the effect of a decision by the Secretary of Labor of October 24, 1934, with respect to certain disputes which had arisen between workmen on the job and their employers over classification of laborers and\ mechanics and overtime pay. Final vouchers covering payment in full were certified by the Comptroller General' January 25, 1935.
There is no proof that payment of the vouchers was unreasonably delayed.
Plaintiff is entitled to judgment in the sum of $25,142.42..
It is so ordered.
MaddeN, Judge; Littleton, Judge; and Whalet, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this, case.