**C.B.C. ENTERPRISES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 91–253C.

United States Claims Court.

Sept. 18, 1991.

Gary G. Stevens, Washington, D.C., for plaintiff. Kevin R. Garden and Bruce W. Ballai, of counsel.

Samuel C. Watkins, Washington, D.C., with whom were Asst. Atty. Gen., Stuart M. Gerson, Director David M. Cohen, and Asst. Director Martha H. DeGraff, for defendant.

## OPINION

LYDON, Senior Judge:

This government contract case is before the court on the parties' motions for summary judgment on the issue of liability. Specifically, the issue is whether plaintiff is entitled, as a matter of law, to use the Eichleay formula to calculate plaintiff's recovery of extended home office overhead expenses. After careful consideration of the parties' submissions, oral argument having been held on September 17, 1991, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.[1]

## FACTS

The undisputed facts pertinent to the issue before the court are as follows. Plaintiff C.B.C. Enterprises, Inc. (CBC) entered into a fixed-price contract with the Navy on September 29, 1989 for the construction of certain improvements to Building 250, Marine Corps Air Station, Cherry Point, North Carolina. The original contract price was $927,300, and the original contract was to be completed by July 11, 1990. The contract was subsequently modified several times by the Navy. The present dispute concerns unilateral contract modification P00003 issued by the Navy on June 6, 1990 in the amount of $12,358.46. The direct costs associated with this modification are approximately $10,846, and the remaining $1,512 repre-

---

1. Plaintiff captions its motion as one for "partial" summary judgment on the issue of liability. What plaintiff really seeks is summary judgment on the liability issue with damages to be determined later. Defendant adds to the confusion by captioning its response "Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment." However, defendant advises its "opposition" is filed pursuant to RUSCC 56, the summary judgment rule, and otherwise complies with the procedural requirements of RUSCC 56(d)(1), (2). The court shall treat both motions as summary judgment motions, as the parties agreed at oral argument that there are no material facts in dispute and the issue, as presented, is one of law.

sents compensation CBC received for home office overhead expenses based on a overhead rate of 13.94%. The parties used this 13.94% rate to compensate plaintiff for overhead expenses with regard to other changes and modifications to the contract, some of which also extended the contract performance period.

Modification P00003 required CBC to perform additional work primarily involving duct work changes, supporting existing overhead electrical conduit and junction boxes, and installation of flanges and a pancake blank in the existing sprinkler system. Also, various painting requirements were deleted. The parties agreed that the modification would extend the contract performance period by twenty-four days, through August 4, 1990, to accommodate the extra work. This extra work led plaintiff to request an equitable adjustment to the contract price, including the extended home office overhead that is the subject of the parties' dispute. Subsequent modifications extended the contract completion date through August 24, 1990. CBC completed the contract on August 24, 1990.

Before the Navy unilaterally issued modification P00003, the parties tried to negotiate a bilateral modification concerning the additional work and deletions, which later became the subject of modification P00003, but they were unable to agree on the use of the Eichleay formula as the method for calculating extended home office overhead for the twenty-four day extension of the contract performance period.

In modification P00003, the Navy compensated CBC for $1,512 in home office overhead expenses by applying an overhead rate of 13.94% (general and administrative expense rate) to the additional direct costs $10,846 incurred as a result of P00003. At oral argument, plaintiff explained that the 13.94% rate was utilized by the parties to compensate CBC for overhead expenses on other changes to the contract, some of which extended the contract period by an additional twenty days. With regard to modification P00003, however, plaintiff seeks an additional $13,-805.54 for extended home office overhead expenses, over and above the $1,512 CBC

has already received as overhead expenses on this modification. Thus, plaintiff seeks a total of $14,317 for overhead expenses on a modification with direct costs of only $10,846, which amounts to an overhead rate of 132% on this modification. In plaintiff's view, however, the 13.94% overhead rate did not fully compensate it for extended home office overhead attributable to the additional work. It should be noted, however, that in a document attached to the declaration of plaintiff's Chief Executive Officer, plaintiff indicates that the percentage of plaintiff's total overhead expenses attributable to Building 250 is 13.4%, which is strikingly similar to the general overhead expense rate of 13.94% used by the parties to compensate CBC for overhead expenses on other modifications to this contract.

On September 14, 1990, CBC submitted a claim to the contracting officer for uncompensated extended home office overhead costs in the amount of $13,805.54. This amount represents the difference between CBC's calculation of extended home office overhead using the Eichleay formula, and the Navy's calculation of home office overhead based on a general and administrative expense rate of 13.94%. The contracting officer denied CBC's claim by final decision dated November 30, 1990, in which he affirmed the Navy's position that the Eichleay formula is not appropriate to calculate extended home office overhead damages when the contract performance period is extended due to additional work. According to the Navy, the Eichleay formula may only be used to calculate overhead for suspension of work claims. Plaintiff ostensibly argues that, as a matter of law, the Eichleay formula must be used whenever recovery of extended home office overhead is at issue.

CBC appealed the contracting officer's decision by filing suit directly in this court on January 29, 1991, pursuant to section 609(a), the direct access provision of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et seq.* Plaintiff moved for summary judgment on May 6, 1991.

## DISCUSSION

The issue before the court is whether, as a matter of law, the Eichleay formula is

the appropriate and correct method for calculating extended home office overhead resulting from an extension of the contract performance period for additional work.[2] For over forty-five years, this court, the Federal Circuit, and their predecessor the Court of Claims consistently have held that a government contractor may recover extended home office overhead as part of damages/equitable adjustments for government-caused delay, suspension or extension of the contract performance period. *Capital Elec. Co. v. United States,* 729 F.2d 743, 747 (Fed.Cir.1984) (Friedman, J., concurring); *see also Luria Bros. & Co. v. United States,* 177 Ct.Cl. 676, 369 F.2d 701 (1966); *J.D. Hedin Constr. Co. v. United States,* 171 Ct.Cl. 70, 347 F.2d 235 (1965); *Fred R. Comb Co. v. United States,* 103 Ct.Cl. 174 (1945); *Wilner Constr. Co. v. United States,* 23 Cl.Ct. 241, 260 (1991). The various boards of contract appeals also have consistently allowed recovery of extended home office overhead damages resulting from delay. *Capital Electric, supra,* 729 F.2d at 747 (Friedman, J., concurring).

The courts and boards apply various methods of calculating extended home office overhead, depending on the circumstances of each case. The seminal case, for present purposes, for recovery of extended home office overhead during periods of delay is *Fred R. Comb Co. (Comb),* where the court first applied the formula, which later became known as the Eichleay formula, to calculate home office overhead incurred during a 40-day suspension of work.[3] The formula involves calculating the amount of overhead allocable to the contract in dispute, which is then divided by the number of days of contract performance to get the daily contract overhead figure. The daily contract overhead is then multiplied by the number of days of delay to get the amount recoverable. *See Comb, supra,* 103 Ct.Cl. at 181.

In *Capital Electric,* the Federal Circuit held that a contractor was entitled to recover damages for extended home office overhead for 303 days of government-caused delay under the contract's suspension of work clause, and to calculate such damages using the Eichleay formula.[4] *Capital Electric, supra,* 729 F.2d at 747. The Federal Circuit rejected the government's approach of calculating home office overhead as a percentage markup of the direct costs arising from the delay. "A basic flaw in th[is] method of calculation ... in a case

2. Plaintiff's home office overhead expenses for the additional performance period include salaries of home office clerical and administrative personnel, pension fund contributions, home office facility and equipment rental and depreciation, air conditioning, water, telephone, electricity and other utilities, insurance, supplies, payroll costs, payroll reports, and other business documents required to conduct business.

3. The Eichleay formula is named after the *Eichleay* decision, in which the ASBCA approved a formula for allocating home office overhead expense incurred during a suspension of work. *Eichleay Corp.,* ASBCA No. 5183, 60–2 BCA ¶ 2688, 1960 WL 538 (1960), *aff'd on recon.,* 61–1 BCA ¶ 2894 (1961).

4. In *Capital Electric,* Judge Friedman noted, in a concurring opinion, the theory behind application of the Eichleay formula to calculate extended home office overhead damages incurred during periods of delay:

> By definition [extended home office] overhead cannot be directly attributed to the performance of a particular contract, yet it is an essential part of the contractor's total cost of doing business. Some basis, therefore, must be found for allocating this total overhead among the various contracts in connection with which it is incurred.
>
> A contractor's estimate of its costs necessarily includes its overhead costs, which it calculates on the basis of the time required to perform the contract. Where performance of a contract has been delayed, the overhead expenses of performing that contract continue for the additional time. A portion of the total overhead for that additional period accordingly is allocable as a cost of performing that contract.
>
> . . . . .
>
> In other words, a portion of the overhead incurred during the entire period of performance must be charged against the revenue received during that period as a cost of performing the contract. The Court of Claims decisions, as well as the Eichleay formula used to calculate the amount of such extended office overhead, are based upon and reflect these economic realities of the construction business. I think those decisions are correct. . . .

*Capital Electric, supra,* 729 F.2d at 748 (Friedman, J., concurring).

where no work is being performed during a suspension ... [is that the] application of a percentage overhead charge ... to the direct costs of work performed (zero) would produce zero for overhead that nonetheless continues on." *Capital Electric, supra,* 729 F.2d at 746; *see also Shirley Contracting Corp.,* ASBCA No. 29848, 85–1 BCA ¶ 17,858, at 89,405 (1984). Both before and after *Capital Electric,* various boards of contract appeals have recognized that, in certain circumstances, use of the Eichleay formula is appropriate to calculate home office overhead damages/equitable adjustments resulting from a suspension of work. *See, e.g., Shirley Contracting, supra,* 85–1 BCA ¶ 17,858, at 89,406. However, the ASBCA has warned that application of the Eichleay formula for delays involving a suspension of work is not automatic; the contractor must show that it has, in fact, suffered some damage as a result of the delay. *B & K Construction Co.,* ASBCA No. 37713, 89–3 BCA ¶ 22,247, 1989 WL 110292, *aff'd,* 902 F.2d 44 (Fed.Cir.1990); *Boublis Electric, Inc.,* ASBCA No. 34056, 89–3 BCA ¶ 22,094, 1989 WL 82117; *Ricway, Inc.,* ASBCA No. 29983, 86–2 BCA ¶ 18,841, 1986 WL 19820.

Defendant contends that the Eichleay formula is inappropriate for calculating home office overhead damages where, as under the present circumstances, extension of the contract performance period is due to additional work. On this basis, defendant distinguishes *Capital Electric,* which involved a suspension of work, rather than additional work. In defendant's view, when the contract period is extended due to additional work, rather than a suspension, the contractor is adequately compensated by receiving a percentage overhead mark-up on direct costs added to the contract by the contract modification, here P00003. In this case, as a result of P00003, the Navy compensated CBC for extended home office overhead by multiplying the general and administrative expense rate of 13.94% by direct costs ($10,846). Thus, CBC received $1,512 for extended home office overhead expenses on P00003.

Plaintiff, on the other hand, argues that *Capital Electric* and *Eichleay* both recognize that the Eichleay formula is applicable to extended home office overhead for periods of contract extension as well as suspension. Moreover, plaintiff contends that, as a practical matter, it was not possible for plaintiff to reduce its home office overhead during the twenty-four day delay period by firing or laying off employees, by reducing utility usage or other normal operating expenses, or by closing down any part of its home office operations for this limited time period. Nor was it possible, alleges plaintiff, to take on additional work during this period to increase the direct cost and revenue base to absorb its home office overhead.[5]

For the following reasons, the court finds plaintiff is not entitled, as a matter of law, to compensation for extended home office overhead due to additional work by using the Eichleay formula. The reasoning of *Capital Electric,* although it involved a suspension of work, is most illuminating. When a contract period is extended for additional work, rather than a suspension of work, home office overhead generally can be calculated more accurately by applying a percentage overhead markup to direct costs rather than by use of the Eichleay formula. This is so because, by definition, a suspension of work means that little or no work is being performed, with a corresponding decrease in direct costs incurred. Thus, applying a percentage overhead mark-up to direct costs would produce little or no overhead, and would not adequately compensate the contractor for overhead costs incurred. *Capital Electric, supra,* 729 F.2d at 746; *Excavation–Construction, Inc.,* ENGBCA No. 3858, 82–1 BCA ¶ 15,770, at 78,055, 1982 WL 7302. On the

---

**5.** To the extent that plaintiff alleges that the additional work required by the Navy under the contract prevented plaintiff from pursuing other contracts, such a position is unavailing. Even in breach of contract cases, general claims of lost business opportunities or lost profits are too remote and consequential to be recoverable.

*See William Green Constr. Co. v. United States,* 201 Ct.Cl. 616, 626, 477 F.2d 930, 936–37 (1973), *cert. denied,* 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974); *Rhen v. United States,* 17 Cl.Ct. 140, 143–44 (1989); *Malissa Co. v. United States,* 11 Cl.Ct. 389, 392 (1986).

other hand, when changes are made to add work, and the performance period is extended solely to accommodate the extra work, as in the present situation, there is an ongoing level of work which usually produces sufficient direct costs such that the contractor generally is adequately compensated by applying a percentage overhead markup to direct costs. In the present circumstances, use of the Eichleay formula to calculate extended home office overhead due to additional work would likely produce a less accurate result, because the Eichleay formula embraces the entire contract period, not only the original contract completion time but also subsequent extensions.

Plaintiff reads *Capital Electric* as supportive of plaintiff's view that the Eichleay formula applies to performance extensions as well as to performance suspensions. However, in that portion of the *Capital Electric* opinion on which plaintiff relies, the Federal Circuit is quoting, in a footnote, from the decision below of the contract appeals board. *See Capital Electric, supra,* 729 F.2d at 745 n. 2. There is no indication, however, that the Federal Circuit agreed with the board's decision. Nor is there any indication that the Federal Circuit approved the use of the Eichleay formula for calculating home office overhead damages for a performance extension arising from changes for additional work. *Capital Electric* was decided on its facts. Both the majority opinion and the concurring opinion took great pains to explain why the Eichleay formula is more appropriate than a percentage markup on direct costs for calculating extended home office overhead during a suspension of work, when direct costs are greatly reduced or eliminated. *Capital Electric, supra,* 729 F.2d at 746, 748. Plaintiff has suggested no compelling reason to extend the application of *Capital Electric*, and the Eichleay formula, to situations such as this one involving a performance extension due to additional work.

In several post-*Capital Electric* cases, the ASBCA has interpreted *Capital Electric* to require that the contractor, to recover extended home office overhead incurred by a compensable delay or suspension of work, must make a prima facie showing that it had to "stand by" and that the delay somehow affected the contractor's operations so that it was not practical to undertake the performance of other work. *Gregory Constructors, Inc.,* ASBCA No. 35960, 88–3 BCA ¶ 20,934, 1988 WL 69213; *see also Ricway, Inc.,* ASBCA No. 29983, 86–2 BCA ¶ 18,841; *VEC, Inc.,* ASBCA No. 35988, 90–3 BCA ¶ 23,204, 1990 WL 133143; *Oxwell, Inc.,* ASBCA No. 39768, 90–3 BCA ¶ 23,069, 1990 WL 132884; *Texas Painter Craft, Inc.,* ASBCA No. 34520, 90–2 BCA ¶ 22,662, 1990 WL 10457; *Boublis Electric, Inc.,* ASBCA No. 34056, 89–3 BCA ¶ 22,-094, 1989 WL 82117; *B & K Construction Co.,* ASBCA No. 37713, 89–3 BCA ¶ 22,217; *BFPE International,* ASBCA No. 35330, 88–2 BCA ¶ 20,742, 1988 WL 61836. Plaintiff argues that these cases misinterpret *Capital Electric*, and that the requirement to stand by is irrelevant, since home office expenses continue regardless of whether the contractor's work force is idle. Plaintiff argues it need only make a prima facie showing that it has home office overhead expenses, and that they continued during the performance extension, in order to justify use of the Eichleay formula.

The court does not agree that the ASBCA has wrongly interpreted *Capital Electric* in the numerous cases cited above. In *Capital Electric*, the Federal Circuit, quoting from the *Eichleay* opinion, outlined the circumstances justifying use of the Eichleay formula during a suspension of work: " 'The partial suspensions were lifted at innumerable, varying intervals over a prolonged period of time.... Under the circumstances it would not have been prudent or practical for appellant either to risk the layoff of Home Office personnel or facilities, or, on the other hand, to absorb personnel and facilities so made idle by taking on new commitments.' " *Capital Electric, supra,* 729 F.2d at 746 & n. 5 (quoting *Eichleay, supra,* 61–1 BCA ¶ 2894 at 15,117). The Federal Circuit emphasized that the contractor introduced unrebutted evidence that it could not have taken on any large construction jobs during the various delay periods. *Capital Electric, supra,* 729 F.2d at 745. Thus, the ASBCA's interpretation of *Capital Electric* to re-

quire a contractor to show, during a delay or suspension, that it had to "stand by" and to show that it could not, as a practical matter, undertake other work, is supported by the language and reasoning of *Capital Electric.* Moreover, the language and reasoning of *Capital Electric* supports the conclusion that, except in unusual circumstances not present here, applying a percentage markup to direct costs generally will adequately compensate the contractor for home office overhead for extensions of the contract performance period due to additional work. As the ASBCA explained in *R.W. Contracting, Inc.:*

> [H]ere any delay was caused by the infusion of additional direct costs as a result of changed work, i.e., increased vehicle inspections. Presumably, such increased direct costs incurred in the performance of changed work bear their standard percentage amount of overhead. Here, there is no reason to determine a "daily rate" in place of the normal accounting procedure of applying the conceded actual overhead rate to the appropriate direct cost base, i.e., in this case total *increased* direct costs incurred as a result of the *change* to the contract. Even if a change also has the effect of delaying the total performance of the contract, which we are unable to find here, the contractor normally should be compensated fully through use of the actual home office overhead rate. In fact, the contractor is entitled to allocable overhead computed through use of the percentage rate without regard of the fact that it has not proved that the contract completion date was extended. The contractor presumptively is compensated fully for any increased indirect costs resulting from constructive changes, as well as formally ordered changes, by applying the usual mark-ups on the pertinent direct costs attributable to the change.

*R.W. Contracting, Inc.,* ASBCA No. 24627, 84–2 BCA ¶ 17,302, at 86,220, 1984 WL 13368 (emphasis in original). In the present case, plaintiff has not established that it has incurred any overhead expenses during the 24–day extension period for which it has not been reasonably compensated.

The cases plaintiff relies on in which the Eichleay formula was applied to compensate a contractor for additional work can be distinguished. Plaintiff relies on *Shirley Contracting Corp.,* ASBCA No. 29848, 85–1 BCA ¶ 17858 (1984), for the proposition that the percentage markup on direct costs method does not allocate a fair proportion of home office overhead to the contract during a performance extension. However, *Shirley Contracting* involved government-caused delay and at least two work stoppages. Indeed, in that case the ASBCA stated that the Eichleay formula "is a practical and necessary expedient to compensate the contractor *in situations where the direct cost base is eroded* thus making use of the normal indirect cost allocation percentage rate inappropriate." *Shirley Contracting, supra,* 85–1 BCA ¶ 17858, at 89,405–406 (emphasis added).

For the same reason, plaintiff's reliance on *Excavation–Construction, Inc.* is misplaced. In *Excavation–Construction, Inc.,* ENGBCA No. 3858, 82–1 BCA ¶ 15,770 (1982), the board found it appropriate to apply the Eichleay formula, reasoning that a suspension of work causes direct costs to nearly cease, while overhead costs remain unabsorbed. *Excavation–Construction, supra,* 82–1 BCA ¶ 15,770, at 78,068.

Plaintiff argues that *Cieszko Construction* is factually almost identical to the case at bar. In *Cieszko Construction Co.,* ASBCA No. 34199, 88–1 BCA ¶ 20,223, 1987 WL 45827 (1987), the contract involved the same agency as the present case, and the contract was performed at the same military facility as the present case. However, *Cieszko* is distinguishable on the basis that it involved suspensions of work and government-caused delay, and the board could not determine which days of extension were attributable to suspension and which to government-caused delay. Thus, the board allowed use of the Eichleay formula to calculate home office

overhead. *Cieszko, supra,* 88–1 BCA ¶ 20,-223, at 102,419.

Finally, plaintiff relies on *Savoy Construction Co.,* ASBCA No. 21218, ¶ 18,023 (1985), in which the board, after remand from the Federal Circuit, allowed use of the Eichleay formula to calculate home office overhead for government-caused delays caused by changes to the contract. The Federal Circuit issued *Savoy* as an unpublished opinion as a companion case to *Capital Electric.* The board specifically found that, "under the circumstances we are persuaded that merely allowing appellant a percentage markup of the direct costs would not adequately compensate it." *Savoy Construction, supra,* at 90,723. Under the present circumstances, as discussed above, plaintiff has made no showing that the percentage markup on direct costs method does not adequately compensate plaintiff for home office overhead expenses.[6] Indeed, as noted above, plaintiffs' submissions to the court indicate that Building 250 accounted for 13.4% of plaintiff's total overhead for the time period covered by this contract, which indicates that plaintiff was adequately compensated for extended home office overhead expenses resulting from the twenty-four day time extension by application of the 13.94% general overhead rate.

Accordingly, for the foregoing reasons the court finds plaintiff is not entitled, as a matter of law, to calculate home office overhead using the Eichleay formula. While there may be instances where use of the Eichleay formula to calculate home office overhead is justified in unusual situations where work performance extension is involved, see *Savoy Construction Co., supra,* the work performance extension involved in this case has not been shown to be so unusual or so unreasonable as to justify use of the Eichleay formula, especially where a general and administrative home office overhead rate has been utilized by the parties to compensate CBC for home office overhead on other contract modifications, some of which extended the contract period for an additional twenty days.

### CONCLUSION

Plaintiff's motion for summary judgment is hereby denied, and defendant's motion for summary judgment on liability is granted. The Clerk is directed to enter judgment dismissing plaintiff's complaint. No costs.

---

**6.** At oral argument, plaintiff brought to the court's attention a recent case which plaintiff felt supported its position, *A.A. Beiro Constr. Co., Inc.,* ENGBCA No. 5103, 91–3 BCA ¶ 24,149, 1991 WL 126323 (1991). In *A.A. Beiro,* the board allowed the contractor to recover for extended home office overhead using the Eichleay formula for 118 days of delay resulting from change orders. The board specifically found that the contractor's project manager and its entire office staff spent an "abnormal" amount of time on the project due to the change orders. The board also emphasized that the delays caused by the change orders were of uncertain duration, and that the changes resulted in "substantial" delays as they nearly doubled the original contract performance period. In the present case, the modification extended the original contract period of eight months by only twenty-four days, which is neither a substantial nor an uncertain amount of time. Moreover, CBC has not shown that the modification had any impact on extended home office overhead expenses. Thus, plaintiff's reliance on *A.A. Beiro* to support its position is unavailing.