CLEVENGER, Circuit Judge.
 

 C.B.C. Enterprises, Inc. (CBC) appeals from the September 18, 1991 decision of the United States Claims Court granting summary judgment to the United States.
 
 C.B.C. Enters., Inc. v. United States,
 
 24 Cl.Ct. 187 (1991). The Claims Court held that CBC was not entitled to use the Eichleay formula to calculate extended home office overhead on a 24-day extension of contract performance. We affirm.
 

 I
 

 In September, 1989, CBC contracted with the United States Navy to build certain improvements to a Marine Corps Air Station building at Cherry Point, North Carolina. The original contract price was $927,300 and CBC originally was to complete the improvements by July 11, 1990. During the course of construction the Navy modified the contract several times. On certain modifications which extended the work performance period, the parties agreed to calculate the additional home office overhead at 13.94 percent of direct costs, the rate at which home office overhead was fixed in the basic contract. The present appeal concerns the Navy’s unilateral modification numbered P00003. That modification called for work with direct costs of $10,846.00 and extended CBC’s work performance period by 24 days, during which time CBC’s work was not suspended, delayed or disrupted. All aspects of this modification were mutually agreeable except for the amount necessary to compensate CBC for home office overhead expenses. The Navy awarded CBC $1,512.00 for those expenses, that is 13.94 percent of the modification’s direct costs.
 

 CBC contended that the Navy was required to award it home office overhead for the modification calculated at a daily rate derived from a formula known in the build
 
 *671
 
 ing arts as the Eichleay formula. The Eichleay formula was devised to calculate reimbursable home office overhead costs in the event of suspension of work on a contract, when the suspension decreases the stream of direct costs against which to assess a percentage rate for reimbursement. In the extreme, when direct costs are decreased to naught, employment of a fixed percentage rate absurdly denies recovery of any otherwise demonstrably reimbursable extended home office overhead costs. The Eichleay formula provides a method of constructively calculating daily extended home office overhead, using contract billings, total billings for the contract period, total overhead, days of contract performance, and days of delay.
 
 See, e.g., Capital Elec. Co. v. United States,
 
 729 F.2d 743, 747 (Fed.Cir.1984). Using the Eichleay formula, CBC figured that its total extended home office overhead for modification P00003 was $15,317.54, or $13,-805.54 more than the Navy awarded CBC. CBC submitted a claim for that amount to the contracting officer who denied the claim in November, 1990. He affirmed the Navy’s position that it was impermissible to use Eichleay to calculate extended home office overhead when additional work, not suspension of work, extends the contract performance period.
 

 CBC appealed the contracting officer’s decision to the Claims Court pursuant to 41 U.S.C. § 609(a) (1988). Both CBC and the government moved for summary judgment. The Claims Court read our decision in
 
 Capital Electric
 
 as a general rule that restricts use of the Eichleay formula to situations involving suspensions of work, when direct costs have been greatly reduced or eliminated.
 
 C.B.C.,
 
 24 Cl.Ct. at 191. Citing
 
 Savoy Constr. Co.,
 
 85-2 B.C.A. (CCH) ¶ 18,073, 1985 WL 69190 (1985), the Claims Court however discerned an exception to that general rule, stating that “there may be instances where use of the Eichleay formula ... is justified in unusual situations where work performance extension is involved____”
 
 C.B.C.,
 
 24 Cl.Ct. at 193. The Claims Court granted summary judgment to the government, reasoning that the performance extension in this case was not “so unusual or so unreasonable” as to warrant extending use of the Eichleay method beyond work suspension situations.
 
 Id.
 

 II
 

 CBC argues that this court, the Court of Claims and the Claims Court have consistently held that a contractor is entitled to use the Eichleay daily rate formula to recover extended home office overhead for delays, suspensions or extensions of contract performance caused by the government. Accordingly, CBC asserts that the Claims Court erred in confining use of the Eichleay formula to situations involving work suspension generally and exceptionally to contract extensions exhibiting “unusual circumstances.” In CBC’s view, using the Eichleay formula to calculate home office overhead for extended contract performance periods should be the rule, with only two exceptions: added work not extending the performance period and performance extensions involving added work equal to or greater than the original contract’s daily rate of direct costs. In those circumstances, use of the parties’ agreed percentage overhead rate would be appropriate because the direct cost stream has not been diminished.
 
 Amicus curiae
 
 Associated General Contractors of America urges us to adopt CBC’s arguments.
 

 By contrast, the government contends that the Eichleay formula is never appropriately applied to mere extensions of contract performance occasioned by contract modifications adding work to be performed. From the government’s perspective, the general rule requires recovery of extended home office overhead under agreed percentage rates. The Eichleay formula, the government says, is an exception to that rule, and may only be applied where a contractor incurs extended overhead expenses as a result of government-caused delay, disruption or suspension of work.
 

 
 *672
 
 III
 

 This case thus requires us to decide which of two methods should be used to reimburse a contractor for home office overhead costs incurred by reason of a contact extension to perform additional work. Those two methods are: (i) a fixed percentage mark-up of the direct costs incurred, in this case 13.94 percent; and (ii) a constructive daily rate derived using the Eichleay formula.
 

 Contractors dealing with the government are entitled to recover in the contract price a portion of their home office overhead. 48 C.F.R. §§ 31.203-205 (1990). Home office overhead includes the cost of such items as weekly payrolls, Davis-Bacon reports, checks, W-2’s, 941’s and other required tax forms, cost records, review submittals from subcontractors, weekly and monthly progress reports to the government, salaries, dues and subscriptions, auto and travel, telephone and photocopying.
 
 Capital Elec.,
 
 729 F.2d at 746. Conventional wisdom has it that such costs cannot, by their nature, be specified and traced to any particular contract. Were such specification and tracing possible, such charges should properly be direct costs of a contract.
 
 See
 
 Herman M. Braude, Joseph C. Kovars & Thomas J. Wingfield III,
 
 Extended Home Office Overhead: Basic Principles and Guidelines,
 
 Construction Briefings, June 1984, at 7. For this reason, extended home office overhead costs are approximated.
 

 The Eichleay method of calculating extended home office overhead has a long history. As we shall see, contractors have been permitted to use this method to calculate extended home office overhead in situations where disruption, delay or outright suspension have cast a cloud of uncertainty over the length of the performance period of the contract.
 

 Judicial approval for using a daily overhead rate to calculate extended home office overhead during periods of government-caused delay first appeared some time ago in
 
 Herbert M. Baruch Corp. v. United States,
 
 93 Ct.Cl. 107 (1941). In that case, the Court of Claims awarded the contractor apportioned general office overhead for a period of “unforeseen and uncontemplated delay” that resulted from stop orders issued by the government.
 
 Id.
 
 at 126. Similarly, in
 
 Brand Inv. Co. v. United States,
 
 58 F.Supp. 749, 102 Ct.Cl. 40 (1944),
 
 cert. denied,
 
 324 U.S. 850, 65 S.Ct. 684, 89 L.Ed. 1410 (1945), the Court of Claims awarded Brand a “proportionate part of its main office overhead” for an actual work stoppage of 109 days.
 
 Id.
 
 58 F.Supp. at 751.
 

 The following year, the Court of Claims discussed the issue of proportional overhead recovery at length in
 
 Fred R. Comb Co. v. United States,
 
 103 Ct.Cl. 174 (1945). In that case, the court awarded the contractor two months of proportional overhead after the government suspended operations on the contract for an indefinite period while it perfected title to land involved in the contract’s performance.
 
 Id.
 
 at 182-83. The court estimated that the contract at issue accounted for 16 percent of Comb’s work for the year. Total overhead for the contract was then calculated to be 16 percent of Comb’s total overhead expenses. Division of that amount by 12 produced a monthly overhead rate which was multiplied by two to arrive at the damages award.
 
 Id.
 
 at 181. Several other such cases followed, including:
 
 Henry Ericsson Co. v. United States,
 
 62 F.Supp. 312, 319-20, 104 Ct.Cl. 397 (1945),
 
 cert. denied,
 
 327 U.S. 784, 66 S.Ct. 701, 90 L.Ed. 1011 (1946);
 
 Continental Ill. Nat’l Bank & Trust Co. v. United States,
 
 115 F.Supp. 892, 126 Ct.Cl. 631, 677-78 (1953),
 
 interest judgment overruled by Komatsu Mfg. Co. v. United States,
 
 131 F.Supp. 949, 132 Ct.Cl. 314 (1955);
 
 F.H. McGraw & Co. v. United States,
 
 130 F.Supp. 394, 131 Ct.Cl. 501, 577 (1955).
 

 In 1960, the Armed Services Board of Contract Appeals devised a similar daily rate formula to estimate extended home office overhead.
 
 Eichleay Corp.,
 
 60-2 B.C.A. (CCH) ¶ 2688, 1960 WL 538 (1960),
 
 aff'd on reconsid.,
 
 61-1 B.C.A. (CCH)
 
 *673
 
 ¶ 2894 (ASBCA 1961).
 
 *
 
 Citing
 
 Fred R. Comb,
 
 the Board stated that the contractor need not prove a specific amount of extended overhead, but instead need only assert a fair allocation to compensate for the government delays which caused suspension of approximately one-half the work under the contract.
 
 Id.
 
 at 13,573, 13,575. The Board ultimately concluded that its formula, destined to be titled the “Eichleay” formula, was the best way to “allocate home office expenses incurred during a period of suspension of work” when “it was ... not practical for the contractor to undertake the performance of other work which might absorb them.”
 
 Id.
 
 at 13,573. The Board reasoned that:
 

 overhead costs, including the main office expenses involved in this case, cannot ordinarily be charged to a particular contract. They represent the cost of general facilities and administration necessary to the performance of all contracts. It is therefore necessary to allocate them to specific contracts on some fair basis of proration.
 

 Id.
 
 at 13,574. On reconsideration, the Board clarified the type of suspension at issue in
 
 Eichleay Corp.:
 

 Performance of the contracts was at no time completely suspended and the delays were not continuous. One item of work would be suspended, then another and so on through an extended series of suspensions. The partial suspensions were lifted at innumerable, varying intervals over a prolonged period of time with the issuance of the numerous modifications providing for changes in the contracts.
 

 Eichleay Corp.,
 
 61-1 B.C.A. (CCH) ¶ 2894, at 15,117 (ASBCA 1961).
 

 Following the
 
 Eichleay Corp.
 
 decision, the Court of Claims approved award of overhead costs prorated on a daily basis in cases where the government caused disruption, suspension or delay during performance of the contract.
 
 See, e.g., Luria Bros. & Co. v. United States,
 
 369 F.2d 701, 706-07, 711, 177 Ct.Cl. 676 (1966) (subsoil investigations meant the contractor was ordered to stop all pourings of footings so that the entire project substantially fell to a halt);
 
 J.D. Hedin Constr. Co. v. United States,
 
 347 F.2d 235, 242, 245, 171 Ct.Cl. 70 (1965) (no productive work accomplished for 11 weeks while pile driving operations were suspended pending decision of the Veterans Administration).
 

 Then in 1984, this court refused to accede to the government’s request to jettison use of the Eichleay formula to calculate such delay damages.
 
 Capital Elec. Co.,
 
 729 F.2d at 747. Instead, this court approved the use of the Eichleay formula to calculate extended home office overhead under the suspension of work clause provided that compensable delay occurred, and
 
 *674
 
 that the contractor could not have taken on any other jobs during the contract period. The contractor having met this burden, the government may only preclude use of the Eichleay formula if it can somehow show that the contractor would suffer no loss by using a fixed percentage mark-up formula.
 
 Id.
 
 at 745-46. The facts underlying our decision in
 
 Capital Electric
 
 tie use of the Eichleay formula to the uncertainty caused by suspension, disruption or delay of contract performance because, although its work was never completely stopped, Capital Electric’s work was “unreasonably delayed and disrupted” for 302 days such that it “was never able to man the job as planned.”
 
 Capital Elec. Co.,
 
 83-2 B.C.A. (CCH) ¶ 16,548, at 82,302 (GSBCA 1983),
 
 rev’d on other grounds,
 
 729 F.2d 743 (Fed.Cir.1984).
 

 This same element of uncertainty, engendered by the fact of disruption, suspension or delay of contract performance, has been present whenever the courts or the Boards of Contract Appeals have permitted extended home office overhead to be calculated under the Eichleay formula.
 
 See, e.g., Weaver-Bailey Contractors, Inc. v. United States,
 
 19 Cl.Ct. 474, 477 (1990) (government’s inaccurate estimate caused delay that was unforeseeable and beyond control of the contractor);
 
 A.A. Beiro Constr. Co.,
 
 91-3 B.C.A. (CCH) ¶ 24,149, at 120,844, 1991 WL 126323 (ENGBCA 1991) (duration of delays uncertain so that contractor could not divert resources to other work);
 
 Cieszko Constr. Co.,
 
 88-1 B.C.A. (CCH) ¶ 20,223, at 102,417, 1987 WL 45827 (ASBCA 1987) (contractor put off-site for six weeks while government procured appropriate doors; government caused further delays due to sludge removal);
 
 Shirley Contracting Corp.,
 
 85-1 B.C.A. (CCH) ¶ 17,858, at 89,399-400 (ASBCA 1984) (lengthy suspension of work because of government inability to authorize changes due to lack of funds meant that contractor was uncertain as to when work might resume);
 
 Excavation-Constr., Inc.,
 
 82-1 B.C.A. (CCH) ¶ 15,770, at 78,067-68, 1982 WL 7302 (ENGBCA 1982) (virtually impossible to trace directly the effect of each separate delay that reached a total of 66 days);
 
 Savoy Constr. Co.,
 
 85-2 B.C.A. (CCH) ¶ 18,073, at 90,723, 1985 WL 69190 (ASBCA 1985) (decision after remand following Federal Circuit’s opinion in
 
 Capital Electric)
 
 (changes at the beginning of the project continued sporadically throughout the period of construction causing “unknown length of delays”). See also
 
 Williams Enters., Inc. v. Sherman R. Smoot Co.,
 
 938 F.2d 230 (D.C.Cir.1991) (private contractor allowed to recover overhead expenses from subcontractor due to delay caused by subcontractor’s negligence). In all of these cases when disruption, suspension or delay caused by the government has reduced the stream of direct costs in a contract, it is appropriate to use the Eichleay formula to calculate extended home office overhead instead of the fixed percentage rate formula because the latter would not adequately compensate the contractor for extended home office overhead.
 

 IV
 

 CBC and
 
 amicus curiae
 
 argue that use of Eichleay should be permitted in any instance in which a contract modification results in an erosion of direct costs because a percentage mark-up of the decreased additional direct costs will not allocate a fair proportion of home office overhead to the contract. This desire to extend availability of the Eichleay formula to pure contract extensions would likely transform use of the formula from an exception to a rule, making the formula applicable to nearly every contract. CBC maintains that extended home office overhead expenses would not be calculated using the Eichleay formula for the majority of pure contract extensions. CBC, however, can only articulate two occasions when use of the Eichleay formula would be inappropriate,
 
 i.e.,
 
 would not reduce the stream of direct costs: contract modifications that add direct costs but do not extend the time for performance, and contract modifications that, over an extended period of time, add direct costs equal to or greater than the amount of direct costs per day under the original contract. Moreover, CBC offers only attorney argument, not empirical data, to support its contention that the Eichleay formula will thus be inapplicable for the majority of contract extensions. We are
 
 *675
 
 not persuaded. It appears more likely that the greater part of all contract modifications would qualify for the Eichleay rule under CBC’s contention.
 

 In our view, CBC seeks a drastic shift in the circumstances under which the Eichleay formula has been available. Such an extension of the formula’s use is no less drastic than the government’s urging in the
 
 Capital Electric
 
 litigation that Eichleay be abandoned altogether. As we noted in
 
 Capital Electric,
 
 we believe that Congress, not the courts, should make that decision.
 
 Capital Elec.,
 
 729 F.2d at 747.
 

 We decline the invitation to stand availability of the Eichleay formula on its head. The
 
 raison d’etre
 
 of Eichleay requires at least some element of uncertainty arising from suspension, disruption or delay of contract performance. Such delays are sudden, sporadic and of uncertain duration. As a result, it is impractical for the contractor to take on other work during these delays.
 
 See George Hyman Constr. Co. v. Washington Metro. Area Transit Auth.,
 
 816 F.2d 753, 756-58 (D.C.Cir.1987). By contrast, CBC negotiated a change order with the government which extended contract performance for a brief known period of time. CBC experienced no suspension of work, no idle time and no uncertain periods of delay during the agreed upon extended contract performance period. Where no element of uncertainty is imposed on the contractor, use of the Eichleay formula to calculate extended home office overhead is not permissible. Such a limitation on the use of the Eichleay formula is reasonable because, after all, the Eichleay formula only roughly approximates extended home office overhead.
 
 See generally
 
 5
 
 The Nash & Cibinic Rep.,
 
 ¶ 62, at 166 (Nov. 1991). Thus, computation of extended home office overhead using an estimated daily rate is an extraordinary remedy which is specifically limited to contracts affected by government-caused suspensions, disruptions and delays of work. Absent these circumstances, the Claims Court properly recognized that it is inappropriate to use the Eichleay formula to calculate home office overhead for contract extensions because adequate compensation for overhead expenses may usually be calculated more precisely using a fixed percentage formula.
 
 C.B.C.,
 
 24 Cl.Ct. at 192.
 

 For these reasons the judgment of the Claims Court is
 

 AFFIRMED.
 

 *
 

 The Eichleay Formula
 

 (as approved by the Federal Circuit)
 

 First, calculate:
 

 contract billings total overhead _ X [incurred during the] contract total billings for period contract period overhead allocable to the contract
 

 Second, calculate:
 

 allocable contract overhead [actual] days of [contract] performance daily contract overhead
 

 Third, calculate:
 

 daily contract overhead x [number of] days [of] delay amount recoverable
 

 Capital Elec., 729 F.2d at 747.