[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises from a contract under which the plaintiff company installed a sprinkler system at the Jaysea House of the State's Department of Mental Retardation. It is claimed that Standard Sprinkler has been damaged in the amount of $16,605.82 as a result of delays that the State caused prior to approving of the design which the plaintiff submitted.
The period in question began in June, 1988 and ended on October 20, 1989, when the plaintiff was finally authorized to proceed with the work. The plaintiff satisfactorily completed the work and has been paid in full the contract price of $37,532.00. It now claims, however, additional damages due to improper delays caused by the State.
At the outset in June of 1988 the State asked for bids on this project. On June 14, 1988 the plaintiff was advised that it was the successful bidder as follows:
"June 9, 1988
As low bidder . . . your firm was awarded the contract for Project #B-1 etc. Before proceeding a design must be submitted to this agency for approval by the State Fire Marshall's office."
Thereafter there ensued a series of conferences and letters concerning a controversy arising from the engineering and cosmetic features of the contract. There was a dispute as CT Page 6772 to the placing of the sprinkler heads. From the exhibits submitted however, it is difficult to lay the blame for the delays on any one party, because they appear to have been caused in part by both. That the engineering features were disputable and controversial is indicated by the fact that the engineering company engaged, by the plaintiff offered suggestions which in a sense corrected or enlarged upon the design submitted by Standard Sprinkler. In summary it is difficult to place the blame on any one party.
 II
It is true that our Supreme Court has permitted the award of extended home office overhead damages to a general contractor where governmental action delayed the work under a construction contract. Southern New England ContractingCompany v. State of Connecticut, 165 Conn. 644. In that case, however, the contract was actually in force when the contractor was held up while in the process of construction. The delay was caused by the State's failure to provide certain shop drawings. This failure on the part of the State was a violation of the contract and a cause of financial loss to the contractor. Damages were accordingly allowed in accordance with the so-called Ichleay Formula, which permits damages for general overhead.
In the instant case, however, there was no delay caused by the defendant as previously stated. Actually there was no performance of the contract in effect until after the plaintiff had finally submitted a design satisfactory to the defendant. Thereafter, the contract was completed without delay or fault of the State. Where there is "no suspension of work, no idle time and no uncertain periods of delay . . . use of the Ichleay formula to calculate home office overtime is not permissible. C.B.C. Enterprises Inc. v. U.S., 978 F.2d 669 at 672. The court there considered the situation where an improper delay prevents a contractor from taking on other work. In the present case it is difficult to conclude that a contract of such a modest amount ($37,532.00) would unduly affect the plaintiff's operations to the extent claimed.
Standard Sprinkler also asserts that the contract came into being back in June of 1988. It is true that it was then informed that it was the successful bidder. However, the so-called award of the contract was not an unqualified one. CT Page 6773 Rather, the notification required that the plaintiff submit a design of the project that would meet with the approval of the State Fire Marshall. That approval was not obtained until a much later date.
Judgment with costs may enter in favor of the defendant.
John M. Alexander State Judge Referee