**FORT VANCOUVER PLYWOOD COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 88–1186.**

United States Court of Appeals, Federal Circuit.

Oct. 19, 1988.

Thomas W. Sondag, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., argued for appellant. With him on the brief were James H. Clarke and Charles J. Pruitt.

Paul L. Langer, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, M. Susan Burnett, Asst. Director and Richard P. Nockett, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., were on the brief for appellee. Also on the brief was James Kauble, Deputy Regional Atty., Office of Gen. Counsel, Dept. of Agriculture, of counsel.

Before MAYER and MICHEL Circuit Judges, and NICHOLS, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge.

Fort Vancouver appeals the final decision of the Department of Agriculture Board of Contract Appeals (AGBCA, BCA, or board), AGBCA No. 84-270-1, 88-1 BCA (CCH) ¶ 20,289 (1988), dismissing its appeal of its claim for damages for breach of contract. We reverse and remand for further proceedings consistent with this opinion.

### I. *Background*

On April 5, 1977, the Forest Service of the United States Department of Agriculture (government) entered into Contract No. 01689-6 with Fort Vancouver Plywood Company (Fort Vancouver). The contract was known as the Fogbound Sale and was for the sale of timber in a 189-acre region of the Gifford Pinchot National Forest in the State of Washington. By October 2, 1979, Fort Vancouver had felled and bucked a portion of the timber included in the sale; this timber remained to be scaled and paid for, and was stored in Unit 4 of the 189-acre tract of forest.

On October 2, 1979, the Forest Service undertook a slash burning project known as the Ruth fire in a forest region nearby to that of the Fogbound Sale area. The Ruth fire swept through Unit 4 of the Fogbound Sale area and destroyed the felled and bucked timber which was stored there.

Fort Vancouver submitted a claim to the Forest Service in the amount of $797,-168.92, alleging breach of contract with regard to the destruction of the timber. The claim was denied, and Fort Vancouver appealed to the Board of Contract Appeals. The board dismissed Fort Vancouver's claim for lack of jurisdiction due to Fort Vancouver's failure to properly certify its claim under 41 U.S.C. § 605.

On January 3, 1984, Fort Vancouver submitted a properly certified claim to the Forest Service for a reduced amount; this claim was ultimately denied by the contracting officer and Fort Vancouver appealed to the Board of Contract Appeals.

Concurrently with the contract claims described above, Fort Vancouver was also seeking recovery for the timber damage from the Ruth fire in the United States District Court for the Western District of Washington under the Federal Tort Claims Act (FTCA). 28 U.S.C. §§ 2671–2680. In view of the FTCA claim, the appeal before the board was dismissed without prejudice subject to reinstatement by either party within a period of three years.

The district court litigation lasted for more than four years, and ultimately established that Fort Vancouver could not recover in tort, because it never gained title to the timber under the contract and therefore had no interest protected by law. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547 (9th Cir.1984), *later proceeding*, 804 F.2d 145 (9th Cir.1986). The courts in this phase exercised FTCA jurisdiction only, and considered the contract terms only as they bore on the tort claim. After the ultimate decision on the FTCA claim, Fort Vancouver requested that the board reinstate its appeal. The government filed a motion to dismiss the appeal, and the motion was granted. *Fort Vancouver Plywood Co. v. United States*, AGBCA No. 84–270–1, 88–1 BCA ¶ 20,289 (1988). Fort Vancouver appeals the dismissal of its claim to this court pursuant to 41 U.S.C. § 607(g)(1) and 28 U.S.C. § 1295(a)(10).

Knowledge of the board's decision is assumed. The board denied the government's motion to dismiss appellant's claim on the three bases advanced by the government, namely: lack of jurisdiction, election of remedies, and failure to state a claim upon which relief can be granted. In addition to the theories advanced by the government, the board *sua sponte* raised a theory of comity and judicial efficiency, and the appeal was dismissed on this basis. The government did not adhere to the comity and judicial efficiency theory in this court. In fact, the government conceded at oral argument that the cases cited by the board in support of dismissal on this theory were cited in error and do not stand for the propositions for which they were cited.

## II. *Issues*

The issues before us on appeal are:

(1) Whether the board had jurisdiction.

(2) Whether the board's dismissal of Fort Vancouver's appeal on the nonjurisdictional bases of comity and judicial efficiency was erroneous.

(3) Whether the board's denial of the government's motion to dismiss for failure to state a claim upon which relief can be granted was proper.

(4) Whether the board's denial of the government's motion to dismiss on the basis of election of remedies was proper.

Each of the issues in this appeal presents a question of law which is freely reviewable by this court. *FMC Corporation v. United States*, 853 F.2d 882 (Fed.Cir.1988); 41 U.S.C. § 609(b).

### *Discussion*

(1) *Whether the board had jurisdiction*

This court has recently held that a claimant against the United States, uncertain whether it has a contract or a tort claim, cannot sue in the Claims Court on the contract claim if it also has a suit in a United States District Court on the tort claim with the same "operative facts," though it could not include a tort count in the Claims Court suit, or a contract count in the district court suit. *Johns–Manville Corp. v. United States*, 855 F.2d 1556 (Fed. Cir.1988). This result, which some might

consider harsh, flows from a statutory subject-matter constraint on the jurisdiction of the Claims Court, 28 U.S.C. § 1500, and is fully explained in that opinion. In this case, the government contended for the same rule in the BCA arguing that 41 U.S.C. § 607(d) extends section 1500 to that tribunal. The board, in an unappealed portion of its decision, held on the contrary that section 607(d) only extends to BCA's the type of relief courts may grant, e.g., damages for contract breach, not previously available in BCA's, and not any constraints, such as section 1500 is, on their subject-matter jurisdiction. Section 607(d), after granting BCA's subject-matter jurisdiction of appeals from contracting officer's decisions, continues:

> In exercising this jurisdiction, the agency board is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Claims Court.

■ We consider the correctness of this holding sua sponte because, if it is incorrect, we too would lack jurisdiction except to determine lack of jurisdiction and remand for dismissal accordingly. The board's interpretation is supported by the plain language of section 607(d) and we affirm it. It is well known that the purpose of that sentence was to expand jurisdiction of BCA's to breach claims such as we have here, and claims for contract reformation, not to curtail BCA jurisdiction, which was never suggested. In the legislative history, the result of section 607(d) is stated to be "allowing the boards to handle all claims." S.Rep. No. 95–1118, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5246. By its plain language, 28 U.S. C. § 1500 does not extend to district courts or to the BCA's. Besides, if Congress had wanted to extend section 1500 to any other tribunal, it would be reasonable to expect it to have done so explicitly. Accordingly, the AGBCA had jurisdiction and so do we.

## (2) *Comity and Judicial Efficiency*

The sole ground upon which the board dismissed Fort Vancouver's appeal was that of policy considerations based upon comity and judicial efficiency. At oral argument, the government conceded that the board erred in dismissing Fort Vancouver's claim on this basis. Nonetheless, as this was the sole basis for dismissal, we consider it on appeal.

■ We have reviewed the cases the board cites, and we too find them inapposite. Comity is defined as:

> The principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and decisions of another, not as a matter of obligation, but out of deference and respect.

*Black's Law Dictionary* (5th ed. 1979). Clearly, the board did not give effect to the decision of the Ninth Circuit, as that decision rejected a wholly different theory of recovery from the claim which was before the board. Fort Vancouver's appeal based in contract cannot justly or rationally be disposed of by giving effect to a decision denying relief in tort. The board exercised appropriate comity when it deferred consideration of the contract issue pending resolution of the tort claim. The facts of this case simply do not afford a present opportunity to exercise comity. Therefore, while we still must consider whether any other theory would give the board a proper basis upon which to dismiss Fort Vancouver's appeal, we are certain that comity does not fill the bill.

The judicial efficiency aspect of the policy considerations identified by the board is also an improper basis for dismissal. Although dismissal of Fort Vancouver's claim certainly promotes judicial efficiency by reducing the caseload by one case, a claim otherwise meritorious cannot be dismissed on this basis alone, unless by a tribunal having certiorari-type jurisdiction, which a BCA is not. Accordingly, the board's dismissal of Fort Vancouver's appeal on the bases of comity and judicial efficiency was in error.

## (3) *Failure to State a Claim upon which Relief can be Granted*

Fort Vancouver's claim is one for breach of contract. Fort Vancouver contends that the timber sale contract contained an ex-

press provision obliging the government to permit it to remove timber from the Fogbound Sale area. Fort Vancouver suggests that the government's conduct in initiating the Ruth fire, which destroyed the timber before it could be removed, is a breach of the government's duty to permit removal. Presumably, if the government were held liable, Fort Vancouver would claim lost profits as damages.

The government construes the claim as one for negligent breach of contract, and suggests that the following clause is controlling as to the damage from the Ruth fire:

> ¶ B8.12 If Included Timber is destroyed or damaged by fire, wind, flood, insects, disease or similar cause, the party holding title shall bear the timber-value loss resulting from such destruction or damage, except that such losses after removal of timber from Sale Area, but before Scaling, shall be borne by Purchaser at Current Contract Rates and Required Deposits. There shall be no obligation for Forest Service to supply or for Purchaser to accept and pay for, other timber in lieu of that destroyed or damaged. *This Subsection shall not be construed to relieve either party of liability for negligence.* (Emphasis supplied).

This is conceded to be standard language commonly placed by the Forest Service in its timber sales contracts. According to the government, this paragraph provides only that risk of loss from fire damage shall be borne by the titleholder, and the conclusory sentence of this paragraph serves simply so as not to preclude an action in tort. Fort Vancouver has had its day in court with regard to its tort claim, says the government, and therefore the negligence clause has served its purpose and no longer has a bearing.

The government further contends that the above-quoted paragraph prescribes, as the *exclusive* allocation of loss resulting from fire damage, that the titleholder (government) shall bear the loss. Having already borne this loss, the government argues that Fort Vancouver is not entitled to relief based upon the stated facts.

Fort Vancouver's position is that the language "damaged by fire" relates only to supervening natural causes beyond the control of the parties. Under Fort Vancouver's theory, if the slash burning fire was set in motion by the government, then ¶ B8.12 does not control.

"In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court must 'accept the facts alleged by plaintiff as true.'" *McClary v. United States*, 775 F.2d 280, 283 (Fed.Cir.1985). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McClary, supra, citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Fort Vancouver alleged in its complaint that the Forest Service intentionally ignited a fire on land adjacent to the Fogbound Sale area and that the fire spread into Unit 4, destroying the felled and bucked timber, and that the Forest Service had not asserted or established that it was free of fault. Therefore, the issue is whether these facts, if true, establish an adequate basis for relief.

If we consider the contract provision involved by "plain language" analysis, we determine that whatever else it does, it lacks "plain language" sufficient to support the government's position. The natural interpretation of "negligence" is such negligence as would breach the express or implied commitments of the contract, whatever they might be held to be. We need not stop with "plain language" analysis, however, because we reach the same interpretation if we assume the contract is ambiguous.

Assume, then, the present controversy is before us because the language of the contract is ambiguous. If it dealt with the present claim one way or the other without ambiguity, there would be no lawsuit. Therefore, the ambiguous contract language must be interpreted in order to determine whether relief is available on the facts alleged in Fort Vancouver's claim.

Basic contract construction principles require us first to decide whether the language at issue was patently ambiguous at the time of contracting. If it was, then a duty arises on the nondrafting party to inquire as to its meaning. *United States v. Turner Construction Co.*, 819 F.2d 283 (Fed.Cir.1987).

■ After reviewing the language at issue, we find no provision *"so* glaring as to raise a duty to inquire." (Emphasis in original). *Turner*, 819 F.2d at 286, *citing Newsom v. United States*, 676 F.2d 647, 650, 230 Ct.Cl. 301 (1982). When determining whether contract language is patently ambiguous, the language must be placed at a point along a spectrum of ambiguity. *Newsom*, 676 F.2d at 650. There is a grey area between the point along this spectrum at which a document requires more exacting language and that at which additional detail will add nothing but worthless surplusage. We believe that ¶ B8.12 falls in this grey area and is therefore not patently ambiguous.

■ Having concluded that the ambiguity was not patent, we next examine whether the interpretation of the contract by the party that did not write it was reasonable. *Turner*, 819 F.2d at 285. Under the rule of *contra proferentum*, the contract is construed against its drafter if the interpretation advanced by the nondrafter is reasonable. *Turner*, 819 F.2d at 286.

We pause here to comment that we are not a trial level tribunal, and we would be materially assisted if we had the board's interpretation of this language to consider. The board has considerable experience and expertise interpreting contracts of this nature; they are familiar with the customs and usages of the trade and are uniquely suited to make factual determinations and inquiries which guide the interpretation process. Although interpretation of the clause at issue normally is a question of law freely reviewable by this court, there may be fact questions to resolve in instances of ambiguous contracts. *Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed. Cir.1988). As stated in *Erickson Air*

*Crane Company of Washington, Inc. v. United States*, 731 F.2d 810, 814 (Fed.Cir. 1984), "legal interpretations by tribunals having expertise are helpful to us, even if not compelling," and all the more so when fact questions are intertwined. *See also Al Johnson Construction Co. v. United States*, 854 F.2d 467 (Fed.Cir.1988). "A Board's interpretation of a contract will be given careful consideration and great respect." *Turner*, 819 F.2d at 285, *citing Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir.1985).

Turning now to the language at issue, Fort Vancouver suggests that the "damaged by fire" language of ¶ B8.12 encompasses only supervening natural acts. The Ruth fire not being a supervening natural act, ¶ B8.12 does not control. The government argues that the language encompasses more than supervening acts of nature, and that ¶ B8.12 is controlling, notwithstanding the provision regarding liability for negligence. The negligence clause, it is argued, simply serves to confine liability for negligence to situations involving recovery in tort.

■ We do not go so far as to adopt Fort Vancouver's interpretation of the contract without the benefit of the board's legal conclusion on this issue. We hold only that the clause at issue does not unambiguously confine the negligence exception of ¶ B8.12 to situations involving recovery in tort, as the government would have us hold. Therefore, it is possible for Fort Vancouver to prove a set of facts which would entitle it to relief, and Fort Vancouver has thus stated a claim upon which relief can be granted.

## (4) *Election of Remedies*

■ The government also argues that Fort Vancouver's claim is barred by the doctrine of election of remedies. The doctrine is equitable in nature, and the board's determination on this issue will not be set aside absent an abuse of discretion. The election of remedies doctrine:

[R]ests upon the principle that he who seeks equity must do it, and means, as

the term is ordinarily used, that where two inconsistent or alternative rights or claims are presented to the choice of a party, by a person who manifests the clear intention that he should not enjoy both, then he must accept or reject one or the other.

*Peters v. Bain*, 133 U.S. 670, 695, 10 S.Ct. 354, 362, 33 L.Ed. 696 (1890).

With the enactment of the Federal Rules of Civil Procedure, the traditional election doctrine was relaxed. *See* Fed.R.Civ.P. 8(e)(2); (a party may plead alternatively and inconsistently).

In the present case, Fort Vancouver was not presented with a true election of remedies. The contract and tort claims could not be presented in the same forum. 28 U.S.C. §§ 1295(a)(10) and 1346. Therefore, Fort Vancouver did not make an *election* of remedies, as there was only one possible course of action to take for each claim. Fort Vancouver was required to file separate actions seeking recovery in tort and contract due to the jurisdictional scheme of our court system, and it should not be penalized for the unwieldy organization Congress has devised for our courts. One of our predecessor courts has held that the election of remedies doctrine does not justify placing "plaintiff under a greater handicap simply because of the bifurcated nature of the procedures under which those contracting with the Government must seek relief." *Petrofsky v. United States*, 488 F.2d 1394, 1405, 203 Ct.Cl. 347 (1973).

Accordingly, the board did not abuse its discretion in declining to invoke this equitable doctrine, and the denial of the government's motion to dismiss on the basis of election of remedies is affirmed.

### Conclusion

The board and we ourselves have jurisdiction. We reverse that portion of the board's judgment dismissing the appeal on the bases of comity and judicial efficiency. We affirm that portion of the board's judgment denying the motion to dismiss for failure to state a claim upon which relief can be granted, on different grounds. We affirm the portion of the board's judgment denying the motion to dismiss based upon election of remedies. We remand for further proceedings consistent with this opinion.

### COSTS

Each party shall bear its own costs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.