**COMMUNITY HEATING & PLUMBING COMPANY, INC., Appellant,**

v.

**Admiral Frank B. KELSO, II, Acting Secretary of the Navy, Appellee.**

No. 92–1362.

United States Court of Appeals, Federal Circuit.

March 11, 1993.

Cherry Point, North Carolina. Community seeks compensation for: 1) the costs associated with the installation of conduit sleeves in existing manholes; and, 2) the costs which arose from delays experienced by the project.[2] We affirm the decision of the board.

### The Conduit Sleeve Claim

On May 18, 1982, Community submitted a bid in response to the Navy's Invitation for Bids. On May 19, Navy Contract Specialist Rosalind D. Rogers replied by mail informing Community that although it was the apparent low bidder, its bid appeared "somewhat out of line" as compared to the Navy's estimate and the other bids received. In fact, Community's estimate for the project was 14% below the Navy estimate and 5% below the second lowest bid received. Accordingly, Ms. Roger's letter instructed Community to check its proposal and confirm its bid price in writing. In addition, Navy officials decided that if the bid were confirmed, Community should also be required to meet with the Navy officials to reverify the project's scope. On June 1, 1982, Community confirmed its bid, and on June 3 a bid confirmation meeting was held at the Navy's offices. Those present at the meeting included Mr. Levy for Community and Mr. Manger (LANT-DIV Engineer), Mr. Hiteshaw (the drafter of the project drawings), and Ms. Rogers for the Navy.[3] The only evidence in the record regarding the discussions which took place at the meeting was the testimony of those in attendance and a memorandum written by Ms. Rogers the following day.

On June 4, 1982, the day after the meeting, Mr. Levy wrote a letter to the Navy

Gary R. Boehlert, Watt, Tieder, Killian & Hoffar, McLean, VA, argued for appellant. With him on the brief was Douglas C. Proxmire.

Dean L. Grayson, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Martha H. DeGraff, Asst. Director. Also on the brief was Ronald L. Fouse, Office of Gen. Counsel, Dept. of the Navy, of counsel.

Before NEWMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and LOURIE, Circuit Judge.

BENNETT, Senior Circuit Judge.

This is an appeal from a decision of the Armed Services Board of Contract Appeals (board) denying the claims brought by Community Heating and Plumbing Co., Inc. (Community), against the Secretary of the United States Navy (Navy).[1] The claims arose out of a contract to remove and replace the condensate and steam system located at the Marine Corps Air Station,

---

1. *Community Heating & Plumbing Co.,* ASBCA Nos. 37981, 38166, 38167, 38168, 38467, 40151, 92–2 BCA (CCH) ¶ 24,870 at 124,051.

2. In this combined appeal, Community seeks the following work delay costs: extended contractor-owned equipment (ASBCA No. 37981); extended home office overhead (ASBCA No. 40151); extended field office overhead (ASBCA No. 38467); overtime (ASBCA No. 38166); lost labor productivity (ASBCA No. 40151); and

profit in excess of the 6% allowed by the Navy on contract modifications (ASBCA No. 38168). Also claimed was an equitable adjustment for placing conduit sleeves on existing manholes. (ASBCA No. 38167.)

3. Also present at the meeting were Mr. Harrison and Mr. Butt representing the Navy. The latter was the writer of the specifications.

referencing the meeting and stating in part:

The items listed below were discussed and approved during our June 3, 1982 conference.

. . . .

3. The conduit sleeves shown on Sheet M–5 in the lower righthand corner *are for the new manholes only* for both condensate and steam.

(Emphasis added.)

The Navy responded to Community's June 4 communication with a letter dated June 21, 1982. That letter made no express objection to Community's contract interpretation regarding the conduit sleeves, but it did state in part:

The meeting referred to in your letter was held as part of the bid confirmation process in order to insure that you had considered all components of the job in preparing your bid. Contract awards on formally advertised procurements must be made in strict accordance with the terms of the Invitation for Bids.

. . . .

It is requested that you verify in writing the correctness of your bid in accordance with the Invitation for Bids.

On June 30, 1982, the bid was confirmed in writing, and on July 15, 1982, the contract, No. N62470–81–C–1345, was awarded to Community.

After the contract was awarded, the Navy directed Community to furnish conduit sleeves in new and existing manholes "where needed." Community then brought a claim for additional compensation, ASBCA No. 38167, arguing that the contract required installation of conduit sleeves at new manholes only. Upon consideration of the evidence, the board ruled in favor of the Navy in a final decision dated February 24, 1992. The board held that the contract was unambiguous since there was "no way" the contract could be construed in the manner advocated by Community. Community now appeals.

### Standard of Review

Under 41 U.S.C. § 609(b) (1988), the decision of the board on any question of law is not final or conclusive, but the decision on any question of fact "shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." *See Triax-Pacific v. Stone,* 958 F.2d 351, 353 (Fed.Cir.1992).

■ Community argues that the contract contained latent ambiguity and, because the June 4 letter gave notice of Community's contract interpretation, the Navy is bound to that interpretation by its failure to object. *Lykes–Youngstown Corp. v. United States,* 420 F.2d 735, 190 Ct.Cl. 348, *cert. denied,* 400 U.S. 865, 91 S.Ct. 102, 27 L.Ed.2d 104 (1970); *Maxwell Dynamometer Co. v. United States,* 386 F.2d 855, 181 Ct.Cl. 607 (1967); *Midwest Transit, Inc.,* PSBCA No. 1504, 87–3 BCA (CCH) ¶ 20,079 at 101,656. However, Community's alternate contract interpretation cannot be adopted if the present contract is unambiguous, *Perry & Wallis, Inc. v. United States,* 427 F.2d 722, 725, 192 Ct.Cl. 310 (1970) (holding that where a contract is not ambiguous, the wording of the contract controls its meaning and resort cannot be had to extraneous circumstances or subjective interpretations), or if the ambiguity is patent. *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985) (holding that the existence of a patent ambiguity raises a duty to inquire, regardless of the reasonableness of contractor's interpretation).

■ Community asserts that the contract, as it pertains to the conduit sleeves, is ambiguous. It contests the Navy's reading of the contract, which was adopted by the board, and argues in favor of an alternative contract interpretation based upon its own reading of the contract language, specifications and drawings. However, contracts are not necessarily rendered ambiguous by the mere fact that the parties disagree as to the meaning of their provisions. *Brunswick Corp. v. United States,* 951 F.2d 334, 337 (Fed.Cir.1991); *Blake Constr. Co. v. United States,* 597 F.2d

1357, 1359, 220 Ct.Cl. 56 (1979); *John C. Grimberg Co. v. United States,* 7 Cl.Ct. 452, 457 (Cl.Ct.), *aff'd without opinion,* 785 F.2d 325 (Fed.Cir.1985). That the parties disagree with a specification, or that a contractor's interpretation thereof is conceivable, does not necessarily render that specification ambiguous so as to require that it be construed against the drafter. *Ace Constr. Co. v. United States,* 401 F.2d 816, 820, 185 Ct.Cl. 487 (1968). A contract is ambiguous if it is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language. *Edward R. Marden Corp. v. United States,* 803 F.2d 701, 705 (Fed.Cir.1986); *Highway Prods., Inc. v. United States,* 530 F.2d 911, 917, 208 Ct.Cl. 926 (1976); *Sun Shipbuilding & Dry Dock Co. v. United States,* 393 F.2d 807, 815–16, 183 Ct.Cl. 358 (1968).

 Here, Community's contract interpretation, based on its reading of the contract drawings and specifications, is not reasonable. First, there is substantial evidence in the drawings to support the board's finding that conduit sleeves are required in new and existing manholes.[4] Second, the M–6 project drawings are entitled "Typical Detail Showing Penetration of *Exist.* Manholes or Bldg. Pit Wall for Condensate Line". (Emphasis added.) Finally, other bidders interpreted the drawings to mean that the conduit sleeves are required in new and existing manholes.[5]

 In addition, the board held that the contract was unambiguous. Contract ambiguity is a question of law, *Newsom v. United States,* 676 F.2d 647, 649, 230 Ct.Cl. 301 (1982), which is reviewable de novo by this court. 41 U.S.C. § 609(b) (1988). However, the board has considerable experience and expertise in interpreting government contracts, and its interpretation is given careful consideration and great respect. *United States v. Turner Constr. Co.,* 819 F.2d 283, 285 (Fed.Cir.1987) (quoting *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985)). Accordingly, the contract is unambiguous, and Community's conduit sleeve claim must be rejected.

 Assuming the contract were ambiguous, Community's claim would still fail because the contract ambiguity is patent and not latent.[6] The determination of whether an ambiguity is patent is not a "yes-no proposition." *Newsom,* 676 F.2d at 650. "When determining whether contract language is patently ambiguous, the language must be placed at a point along a spectrum of ambiguity." *Fort Vancouver Plywood Co. v. United States,* 860 F.2d 409, 414 (Fed.Cir.1988). "There is a grey area between the point along this spectrum at which a document requires more exacting language and that at which additional detail will add nothing but worthless surplusage." *Id.* Thus, a patent ambiguity does not exist where the ambiguity is "neither glaring nor substantial nor patently obvious." *Mountain Home Contractors v. United States,* 425 F.2d 1260, 1264, 192 Ct.Cl. 16 (1970). Here, Community did inquire about the conduit sleeves and any ambiguity would have therefore been patent. *Vista Scientific Corp. v. United States,* 808 F.2d 50, 52 (Fed.Cir.1986).

 If a contract contains a patent ambiguity, the contractor is under a duty to inquire and must seek clarification of the proper contract interpretation. *Interstate Gen. Gov't Contractors, Inc., v. Stone,* 980 F.2d 1433 (Fed.Cir.1992); *J.A. Jones Constr. Co. v. United States,* 395 F.2d 783, 790, 184 Ct.Cl. 1 (1968) (holding that failure

---

**4.** For example, the Sheet M–6 drawings indicate that the existing manhole wall must be patched with concrete. However, if conduit sleeves were required in new manholes only, the concrete around existing manholes would not need to be broken and patched up to install the sleeve.

**5.** This is evidenced by Community's bid estimate which was 5% below that of the second lowest bidder and 14% below the Navy's estimate.

**6.** Even if the ambiguity were latent, appellant's claim would still fail. A contractor's interpretation of a latent ambiguity will only be adopted if it is found to be reasonable. *Froeschle Sons, Inc. v. United States,* 891 F.2d 270, 272 (Fed.Cir. 1989). Here, however, we have found that Community's interpretation was not reasonable.

to recognize an obvious ambiguity does not excuse the contractor from its duty to seek clarification). This policy, known as the patent ambiguity doctrine, was established to prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact. *Newsom*, 676 F.2d at 649.

In addition, where a discrepancy exists in the contract drawings, as Community here alleges, a contractor may be required to seek clarification. *Jefferson Constr. Co. v. United States*, 364 F.2d 420, 176 Ct.Cl. 1363 (1966), *cert. denied*, 386 U.S. 914, 87 S.Ct. 865, 17 L.Ed.2d 786 (1967). For example, in *Woodcrest Constr. Co. v. United States*, 408 F.2d 406, 187 Ct.Cl. 249 (1969), *cert. denied*, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970), one contract drawing showed an existing communications manhole while a related drawing indicated that the same manhole was to be constructed by the contractor. *Id.* 408 F.2d at 412. The court considered this discrepancy obvious and held that the contractor should have asked for clarification. *Id.* 408 F.2d at 412–13.

However, it is not enough under the duty to inquire that a contractor merely make an initial inquiry. *Beacon Constr. Co. v. United States*, 314 F.2d 501, 504, 161 Ct.Cl. 1 (1963) (holding that duty to inquire requires the contractor to call attention to obvious contract omissions and make certain they were deliberate). Also instructive on this point is *Construction Service Co.*, ASBCA No. 4998, 59–1 BCA (CCH) ¶ 2077 at 8838, where a contractor requested clarification of a contract but received an addendum which did not alleviate the confusion. The board found that the duty to inquire had not been met. "If after receiving the addendum, the intended meaning was still not clear to appellant, it should have requested a further clarification." *Id.* at 8846–47.

This holding was reiterated in *Southside Plumbing Co.*, ASBCA No. 8120, 64 BCA (CCH) ¶ 4314 at 20,860. In that case, a contractor became aware of an ambiguity prior to bidding, sought and received an addendum that was expected to furnish clarification and later realized that the addendum failed to resolve the ambiguity. Without seeking further clarification, the contractor bid on the basis of its own interpretation, which, under the circumstances, was more favorable to the contractor. The board held that the contractor had not met its burden under the duty to inquire. "Here, the appellant not only recognized the ambiguity but made inquiry. This circumstance, in our opinion, brings the case within the principle in *Construction Service Company*, that the inquiry should have been pursued to clarification." *Id.* at 20,861 (citation omitted).

The Navy's response to the June 4 letter expressly failed to address the issue of the conduit sleeves and thus provided a strong indication to Community that confusion still existed between the parties. Community was therefore obligated to request further clarification regarding the proper installation of the conduit sleeves. While it troubles this court that the Navy did not directly and timely object to Community's contract interpretation, Community nevertheless failed to satisfy its own obligations under the duty to inquire and thus acted at its own risk when it proceeded to perform on the contract.

In addition, while not a direct response to the June 4 letter, the Navy's reply was sufficient to indicate that the Navy did not acquiesce to Community's alternative contract interpretation. *Cf. Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1571 (Fed.Cir.1991) (holding that "somewhat evasive" response by government to bidders' pre-bid questioning was sufficient to "clearly put bidders on notice" that government intended to restrict option pricing).

*Claims Arising From Work Delays*

Community asserts that a 474–day work delay caused by the Navy resulted in an

unanticipated increase in the total cost of completing the contract. Accordingly, Community seeks to recover alleged additional costs associated with contractor-owned equipment (ASBCA No. 37981), home office overhead (ASBCA No. 40151), field office overhead (ASBCA No. 38467), overtime (ASBCA No. 38166), lost labor productivity (ASBCA No. 40151) and express profit (ASBCA No. 38168). The board found that an accord and satisfaction had occurred as a result of Community's execution of various contract modifications and therefore denied Community's entitlement to all delay and impact costs. The board also rejected each of these claims individually.

 Discharge of a claim by accord and satisfaction occurs when some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim. *Brock & Blevins Co. v. United States*, 343 F.2d 951, 955, 170 Ct.Cl. 52 (1965). However, courts may refuse to bar a claim based upon the defense of accord and satisfaction where the parties continue to consider the claim after execution of a release. *Winn–Senter Constr. Co. v. United States*, 75 F.Supp. 255, 110 Ct.Cl. 34 (1948). "Such conduct manifests an intent that the parties never construed the release as an abandonment of plaintiff's earlier claim." *A & K Plumbing & Mechanical, Inc. v. United States*, 1 Cl.Ct. 716, 723 (1983). Here, the evidence in the record indicates that the Navy continued to negotiate and audit Community's claims years after they were submitted.[7] Accordingly, Community's claims were not barred by an accord and satisfaction, and each claim must therefore be addressed individually.

 On February 25, 1988, Community submitted to the Navy a claim for $390,506 to recover the cost of contractor-owned equipment during an 8–month time extension of the contract. A contractor may recover the cost of contractor-owned equipment incurred over an extended contract period when the government requires the use of that equipment beyond the original contract period and thereby deprives the contractor of its useful value. *Nolan Bros. v. United States*, 437 F.2d 1371, 194 Ct.Cl. 1 (1971). Here, the board found that Community had underbid its costs for the contract by at least $300,000 and had been paid $319,000 for actual equipment costs of $268,000. The decision of the board on any question of fact is final and conclusive and will not be set aside unless fraudulent, arbitrary, or capricious or not supported by substantial evidence. 41 U.S.C. § 609(b) (1988). *See US West Communications Servs., Inc. v. United States*, 940 F.2d 622, 625 (Fed.Cir.1991). Community has not met its burden to rebut the board's findings. Accordingly, the board's decision to deny Community further recovery for the cost of contractor-owned equipment is affirmed. Community seeks to recover home office costs for the period between December 16, 1984 and April 4, 1986, as calculated under the Eichleay formula based upon an extension of performance created by government ordered changes. "Where performance of a contract has been delayed, the overhead expenses of performing that contract continue for the additional time." *Capital Elec. Co. v. United States*, 729 F.2d 743, 748 (Fed.Cir.1984) (Friedman, J., concurring). "A portion of the total overhead for that additional period accordingly is allocable as a cost of performing that contract." *Id.* Thus, a government contractor may recover extended home office overhead during periods of government-caused delay. 48 C.F.R. §§ 31.203–.205 (1990). *See Luria Bros. v. United States*, 369 F.2d 701, 177 Ct.Cl. 676 (1966); *J.D. Hedin Constr. Co. v. United States*, 347 F.2d 235, 171 Ct.Cl. 70 (1965); *Fred R. Comb Co. v. United States*, 103 Ct.Cl. 174 (1945).

 This court reviewed the two methods of recovering home office overhead in *C.B.C. Enterprises, Inc. v. United States*,

---

7. Specifically, the evidence shows that the Navy administered, reviewed, and negotiated Community's claims on its merits prior to and after execution of the subject contract negotiations and waited more than two and one-half years to first raise the defense of accord and satisfaction.

978 F.2d 669 (Fed.Cir.1992). The first method would allow a contractor to recover a fixed percentage mark-up of the direct costs it incurred. *Id.* at 672. However, if compensable delay occurs and the contractor demonstrates that it could not have taken on any other jobs during the contract period, the Eichleay formula, which calculates home office overhead on a daily basis, may also be used. *Id.* at 672–74. "The contractor having met this burden, the government may only preclude use of the Eichleay formula if it can somehow show that the contractor would suffer no loss by using a fixed percentage mark-up formula." *Id.* at 674; *see Capital Elec. Co.,* 729 F.2d at 745–46.

■■■ In the present case, Community's claim for home office costs arises out of contract performance involving continuous original and additional changes work rather than a suspension or hiatus in performance which would affect direct costs. There was no evidence that the contract changes resulted in a delay in performance which required Community to stand by idly and suspend its work. In addition, Community was paid a 27% home office overhead mark-up to compensate for change order work. Accordingly, Community's claim to recover extended home office overhead costs by any method is rejected.

### Remaining Claims

Finally, Community seeks to recover field overhead costs for the period between September 15, 1985 and October 31, 1985; lost labor productivity costs caused by Navy acts and omissions; the overtime wages it paid to its work force for performing extra work; and additional profit on contract modifications associated with differing site conditions. The opinion of the board denying Community recovery on these claims, for the reasons and facts there stated, is not arbitrary or capricious, is supported by substantial evidence, and is therefore affirmed.

### Conclusion

For the aforementioned reasons, the decision of the board is

AFFIRMED.