ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| Mission1st Group, Inc. | ) | ASBCA Nos. 62461, 62646 |
| | ) | |
| Under Contract No. W52P1J-13-F-0031 | ) | |

APPEARANCES FOR THE APPELLANT:            Joshuah R. Turner, Esq.
                                          Elizabeth J. Cappiello, Esq.
                                          Jason N. Workmaster, Esq.
                                            Miller & Chevalier Chartered
                                            Washington, DC

APPEARANCES FOR THE GOVERNMENT:           Scott N. Flesch, Esq.
                                            Army Chief Trial Attorney
                                          Zachary F. Jacobson, Esq.
                                            Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS

In September 2013, the Army Contracting Command – Rock Island Arsenal (Army or government) awarded appellant, Mission1st Group, Inc. (M1), a task order against M1's General Services Administration (GSA) Information Technology (IT) Schedule 70 Contract. The task order provided for a base period and, pursuant to Federal Acquisition Regulation (FAR) 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000), two option periods. In addition, pursuant to FAR 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999), the task order contained an option to extend the contract for a period of up to six months. M1 encountered problems retaining staff at the labor rates it proposed in the task order, and discussed with the Army terminating the contract. After the Army indicated that it planned to exercise the first option period, M1 indicated that it would challenge the exercise of the option unless the government agreed to reprice certain contract line items. M1 also opposed the Army's suggestion that the parties agree to a reduced duration three-month option period. The Army then exercised its right to extend services for a three-month period, pursuant to FAR 52.217-8. The task order was subsequently bilaterally modified twice to extend the period of performance.

M1 contends that the Army improperly exercised the option to extend services out-of-sequence, entitling it to a contractual price adjustment. According to M1, the option to extend services is really an option period 3 that can only be exercised following option periods 1-2. Additionally, M1 argues that the Army's exercise of the option four days before expiration of the base period of performance was not "within

90 days before the expiration of the contract." We hold that the language of the task order permitted the Army to exercise the option to extend services after the base period, and that the option was timely exercised. Additionally, we note that, even if the Army's exercise of the option was defective, M1 waived its right to a contractual adjustment through a subsequent bilateral modification.

FINDINGS OF FACT

The Army Contracting Command – Rock Island Arsenal awarded Task Order No. W52P1J-13-F-0031 to Mission1st Group, Inc. on September 24, 2013, for Network and Communications, Engineering and Installation Support pursuant to M1's GSA IT Schedule 70 Contract No. GS35F0199Y, Special Item No. 132 51, IT Professional Services contract (R4, tab 1 at 1, 4).[1] Under the task order, M1 provided theater communications and networking infrastructure and subject matter experts to perform project management and information assurance in support of the Army primarily in Afghanistan and Kuwait (R4, tab 1 at 4).

The Army awarded the task order as a firm-fixed price contract, with some contract line items (CLINs) such as overtime and travel paid at cost (*id.*). The task order provided:

> This is a Firm-Fixed Price (FFP) task order with a base period and three evaluated option periods.
>
> Base Period:  24 September 2013 to 23 June 2014
>
> Option Period One:  24 June 2014 to 23 March 2015
>
> Option Period Two:  24 March 2015 to 23 December 2015
>
> Option to Extend Services:  Six Month Maximum to be completed no later than 23 June 2016

(*Id.*). The performance work statement "Period of Performance" provides that there is a nine-month base period and "two (2) nine (9) month options" (R4, tab 2 at 51). The prices proposed by M1 and accepted by the Army included $5,355,900.79 for the nine-month base period (R4, tab 1 at 4). The Army also accepted M1's proposed prices for two nine-month option periods, priced at $5,382,254.68 and $5,417,880.85,

---

[1] We have dropped all leading zeros from the Bates numbers used by the government. For documents that were not Bates numbered, we used the document's internal page numbers. Appellant's opposition and reply brief was not paginated so we used the PDF page numbers.

respectively (*id.*). In addition to the option years, M1 proposed a price not to exceed $3,743,169.77 for up to a total of six months of extended services, to be completed no later than June 23, 2016 (*id.*).

Noting that M1's price quote offered a significant discount from the approved GSA Schedule rates, the contracting officer noted that M1 had expressly indicated in its quote that the discount was intentional, and determined that M1's quote was still responsible (gov't supp. R4, tab 7 at 1-3). The task order's clause addendum included the following standard clauses from the FAR:

> 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999)
>
> The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 90 days before the expiration of the contract.[2]
>
> (End of Clause)
>
> 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)
>
> (a) The Government may extend the term of this contract by written notice to the Contractor within the term of the contract prior to contract expiration; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 90 days before the contract expires. The preliminary notice does not commit the Government to an extension.

---

[2] Relevant to the jurisdiction of the Board, but not relevant to our interpretation of the contract, the last sentence of this clause in the FAR provides: "The Contracting Officer may exercise the option by written notice to the Contractor within _____ [insert the period of time within which the Contracting Officer may exercise the option]." FAR 52.217-8. M1's GSA schedule provides: "The Contracting Officer may exercise the option by written notice to the Contractor within 30 days" (gov't supp. R4, tab 10b at 46).

(b)  If the Government exercises this option, the extended
contract shall be considered to include this option clause.

(c)  The total duration of this contract, including the
exercise of any options under this clause, shall not exceed
33 months.[3]

(End of Clause)

(R4, tab 3 at 123)

On March 25, 2014,[4] 91 days prior to the end of the base period of
performance, the Army provided M1 with its notice of intent to exercise the first
option period in accordance with the terms and conditions of the contract and FAR
52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (gov't supp.
R4, tab 3).  On April 25, 2014 and April 28, 2014, M1 alerted the government that it
would have difficulty continuing performance on some of its contract line items unless
the government obligated an additional 25 percent of the estimated not-to-exceed price
(R4, tab 15 at 489-90).

The government offered M1 a draft partial option period for the task order on
June 10, 2014, which, if executed, would have only required M1 to perform for
three-months, rather than the full nine-months contained in the contractual option period
(gov't supp. R4, tab 4 at 1).  Having received no comments from M1, the government
followed-up with M1 on June 17, 2020 (R4, tab 19 at 760).  In response, M1 asserted that

---

[3] Similarly, subsection (c) of the FAR does not specify a total contract duration:
"(c) The total duration of this contract, including the exercise of any options
under this clause, shall not exceed _____ (months) (years)."  FAR
52.217-9(c).  M1's GSA schedule provides "(c) The total duration of this
contract, including the exercise of any options under this clause, shall not
exceed . (months) (years)" (gov't supp. R4, tab 10b at 46).

[4] The government proposed several facts regarding a purported March 21, 2014, meeting
at which the president of M1, met with the contracting officer to discuss M1's
difficulties staffing the contract at the proposed rates, M1's efforts to retain
personnel by paying higher wages, and the possibility of terminating the contract
(gov't br. at 4).  However, the government cites to a document it identifies as
"SR 4, tab G-1" which was not contained in any of the government's Rule 4
submissions.  By order dated April 6, 2021, the Board notified the government
that it appeared some of its cites to its Rule 4 submissions were incorrect and
requested that the government file a corrected brief.  The government's corrected
brief continues to cite to the non-existent tab G-1 (gov't corr. br. at 4).  The
Board was unable to locate support for the proposed facts in the record.

a partial option period would require a bilateral modification, that it was suffering losses, and that it would incur additional losses if the contract were extended (R4, tab 19 at 763). M1 indicated that it would only agree to the partial option period if the government agreed to reprice the contract for "any period beyond the initial three-month extension" (*id.*). M1 stated that an upward price adjustment would "free the government of any liability for additional cost and profit incurred by Mission1st over the entire period of performance beginning with contract inception" (R4, tab 19 at 763-64).

M1 described the additional "consequences" for the government of implementing a modification without repricing or agreed termination at the end of the three-months, such as a reduction in the level of service and performance due to salary cuts of its personnel (*id.* at 764). On June 19, 2014, two days after receiving appellant's letter, the government notified M1 that it was exercising its Option to Extend Services for the task order (R4, tab 20).

On June 23, 2014, the government executed Modification No. P00009 in writing to exercise a three-month option period pursuant to contract clause FAR 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999) (R4, tab 22 at 768, 770). The modification priced the option at $2,149,591 (R4, tab 22 at 768). On July 3, 2014, M1 responded to the government's notice of execution with a letter asserting that the notice to exercise the Option to Extend Services provided by the government was untimely, and therefore ineffective and entitled M1 to an equitable price adjustment (R4, tab 24 at 790-91). M1 also stated that it was able to perform during the extended period, but that it would seek compensation (*id.* at 791).

Effective July 16, 2014, the government and M1 bilaterally signed Modification No. P00010, which stated that all other terms and conditions remained unchanged (R4, tab 25 at 1). Effective August 22, 2014, the government and M1 bilaterally signed Modification No. P00011, under which the government exercised its Option to Extend Services for the remaining three-months, that stated:

9. The total contract value and the total funded value for the Option to Extend Services period are hereby changed from $2,149,591.00 to $4,087,141.03, a total increase of $1,937,550.03.

10. The total contract value and the total funded value for this task order are hereby changed from $7,915,976.49 to $9,853,526.52, a total increase of $1,937,550.03.

11. All other terms and conditions remain unchanged.

(R4, tab 27 at 846, 848-49)

On September 12, 2014, the government and M1, without exception, bilaterally signed Modification No. P00012, which added a logistician position and provided:

> 7. The total contract value and the total funded value for the Option to Extend Services period are hereby changed from $4,087,141.03 to $4,133,723.10, a total increase of $46,582.07.
>
> 8. The total contract value and the total funded value for this task order are hereby changed from $9,853,526.52 to $9,900,108.59, a total increase of $46,582.07.
>
> 9. All other terms and conditions remain unchanged.

(R4, tab 30 at 961, 1011)

On June 24, 2019, M1 filed a certified claim in the amount of $3,694,336.73, asserting that the government improperly exercised its option to extend services, and as a result, it is entitled to excess incurred costs and a reasonable profit (R4, tab 31 at 1018). On March 5, 2020, the contracting officer denied M1's claim (R4, tab 32). On June 3, 2020, M1 filed a certified claim with the GSA requesting a final decision on the same matter currently before the Board (gov't supp. R4, tab 8). On June 3, 2020, M1 also filed a second certified claim with the contracting officer, stating that it had already appealed the March 5, 2020 final decision to the Board, and that it believed that the Board possessed jurisdiction to entertain both counts of its complaint, but was submitting a new claim out of an abundance of caution (gov't supp. R4, tab 9). M1 appealed to the Board from the purported deemed denial of its June 3, 2020 claim.[5]

## DECISION

By request of the parties, this appeal is being decided pursuant to Board Rule 11, "Submission Without a Hearing." Unlike a motion for summary judgment, which must be adjudicated on the basis of a set of undisputed facts, pursuant to Board Rule 11, the Board "may make findings of fact on disputed facts." *Grumman Aerospace Corp.*, ASBCA No. 35185, 92-3 BCA ¶ 25,059 at 124,886 n.13 (Kienlen, J. dissenting).

M1 asserts that the government improperly exercised the option to extend performance out of order, thus entitling it to a contractual adjustment (app. br. at 8). Alternatively, M1 asserts that the government did not provide it with the contractually required notice, thus, entitling it to a contractual adjustment (app. br. at 9).

---

[5] The record does not contain a final decision issued by a GSA contracting officer.

I.       The Contract Allowed The Army To Exercise The Option For Extension
         of Services At The End Of The Base Period Of Performance

The task order clause describing the relevant options provides:

> This is a Firm-Fixed Price (FFP) task order with a base
> period and three evaluated option periods.
>
> Base Period:  24 September 2013 to 23 June 2014
>
> Option Period One:  24 June 2014 to 23 March 2015
>
> Option Period Two:  24 March 2015 to 23 December 2015
>
> Option to Extend Services:  Six Month Maximum to be
> completed no later than 23 June 2016

(R4, tab 1 at 4).  Based upon the location of the option to extend services, below option periods one and two, and the reference to three option periods, M1 contends that the option to extend services should be interpreted as being, in reality, option period three. M1 additionally cites to the end of the performance period for option period three of June 23, 2016, as evidence that the option to extend services was to be exercised following option period two, which had a performance period ending on December 23, 2015.  (app. br. at 8).

In *Glasgow Investigative Solutions, Inc.*, ASBCA No. 58111, 13-1 BCA ¶ 35,286 at 173,175-76, we held that the option to extend services pursuant to FAR 52.217-8 was not limited to use after exercise of the option periods.  *See also Griffin Services, Inc.*, ASBCA Nos. 52280, 52281, 02-2 BCA ¶ 31,943 at 157,803-04. Our prior holding in *Glasgow* is binding on this panel and compels us to deny M1's appeal.  *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,220.  However, even if we were not bound by *Glasgow*, we interpret the terms of the task order as permitting the government to exercise the option to extend services independent of exercising the options to extend the term of the contract.

M1 relies upon the holding of the United States Court of Appeals for the Federal Circuit in *Lockheed Martin Corp. v. Walker*, 149 F.3d 1377 (Fed. Cir. 1998).  In *Lockheed*, the contract provided for a series of options that were to be exercised according to a schedule providing set periods of time for each option.  The government exercised the option at CLIN 0006 to be exercised within 8-18 months after award, without first exercising the option at CLIN 0005, which was to be exercised within 8 months of award.  *Id.* at 1378-79.  The Federal Circuit held that the government had improperly exercised the options out of sequence based upon its reading of the contract

and the fact that the option periods contained declining unit prices, indicating the use of a learning curve. *Id.* at 1380. However, the task order at issue here differs from the schedule in *Lockheed* because the task order contains only an end date, and not a beginning date for exercise of the option to extend services under FAR 52.217-8, while the options to extend the term of the contract under FAR 52.217-9 contain both start and end dates (R4, tab 1 at 3). In *Lockheed* the option periods had beginning and end dates for the exercise of each option. *Lockheed*, 149 F.3d at 1378. Additionally, to the extent that the reference to "three evaluated option periods" (R4, tab 1 at 4) could be ambiguous, it must be read in conjunction with the performance work statement which clearly provides in the "Period of Performance" that there is a 9 month base period and two 9 month option periods (R4, tab 2 at 52).

## II. The Army Properly Exercised The Option For Extension Of Services Within 90 Days Of The End Of The Contract

M1 contends that, even if the Army were permitted to exercise the option to extend services without first exercising the contract options, the Army did not provide notice in accordance with the contract (app. br. at 9). As noted above, the contract provides that "[t]he Contracting Officer may exercise the option by written notice to the Contractor *within 90 days before the expiration of the contract*"[6] (R4, tab 3 at123) (emphasis added). The base period of the contract expired on June 23, 2014 (R4, tab 1 at 4). The government notified M1 that it was exercising its Option to Extend Services for the task order on June 19, 2014 – four days before expiration of the contract (R4, tab 20). On June 23, 2014 – the last day of the base period of the contract -- the government executed Modification No. P00009 to exercise three-months of the Option to Extend Services (R4, tab 22). M1 contends that the Army's exercise of the option was untimely because "within 90 days before the expiration of the contract" means that the Army was required to exercise the option "prior to or on the 90th day before the contract expired" (app. br. at 9). M1 additionally contends that "within" should be read as "at least" (app. resp. at 6).

We interpret the contract based on the plain meaning of the words in their ordinary use. *See*, *e.g.*, *Access Personnel Ser.*, *Inc.*, ASBCA No. 59900, 17-1 BCA ¶ 36,845 at 179,534. Here, the word "within" means "inside the range of (an area or boundary) . . . occurring inside (a particular period of time)". NEW OXFORD AMERICAN DICTIONARY 1985 (3d ed. 2010). Clearly, the government exercised the option "inside" the 90 day period of time before the end of the contract. Accordingly, we hold that the government properly exercised the option to extend services.

---

[6] As noted above, the language "within 90 days before the expiration of the contract" was inserted in the standard FAR clause by the Army contracting officer. Thus, this dispute does not involve interpretation of the terms of the GSA schedule contract, and does not need to be resolved by a GSA contracting officer. *See Sharp Elec. Corp. v. McHugh*, 707 F.3d 1367, 1373-74 (Fed. Cir. 2013).

M1 asserts that the Board's holdings in *APAC-Southeast, Inc. N/K/A Oldcastle S. Grp.*, ASBCA No. 58057, 12-2 BCA ¶ 35,155 and *Petchem, Inc.*, ASBCA No. 53792, 05-1 BCA ¶ 32,870 support its interpretation of "within 90 days" as requiring the government to exercise the option at least 90 days before the end of the contract (app. br. at 9). However, at best, these Board decisions involved the early exercise of options that were not challenged before the Board. Neither appeal involved a determination of whether the government timely exercised the option. *APAC-Southeast* involved the exercise of an option, pursuant to FAR 52.217-8 that exceeded the stated contract duration. *APAC-Southeast*, 12-2 BCA ¶ 35,155 at 172,532. In *Petchem* the government exercised an option to extend services, pursuant to FAR 52.217-8, because it could not meet the notice requirement for exercise of options pursuant to FAR 52.217-9, but then sought to exercise the option to extend services beyond the period of time permitted in the contract. *Petchem*, 05-1 BCA ¶ 32,870 at 162,900-01. Neither opinion addresses the timeliness of the exercise of the options.

III.     Even If The Army Had Not Properly Exercised The Extension Of Services, M1 Waived Any Potential Claim Through The Subsequent Bilateral[7] Modifications

As an alternative basis, the government argues that, even if its exercise of the option to extend services was deficient, that M1 waived its claim by agreeing to bilateral Modification Nos. P00010, P00011, and P00012[8] (gov't br. at 16-17). The government argues that by agreeing to continue performance, with all terms and conditions remaining unchanged, M1 waived its rights to object (*id.*). The government analogizes M1's actions to that of a contractor agreeing to a new delivery schedule and waiving the right to raise pre-existing causes of delay (*id.* at 17). M1 contends that it did not waive any rights and that it waived, at most, its right to stop performing the contract (app. resp. at 7).

The government argues that M1 waived its claim by agreeing to the bilateral modifications. However, waiver occurs when the parties to a contract accept modified performance without changing the terms of the written contract. Here, the parties

---

[7] FAR 2.101 defines the term "option" as a "unilateral right in a contract by which . . . the Government may elect to purchase additional supplies or services . . . or may elect to extend the term of the contract." The exercise of an option must be unconditional and set forth terms that are in accord with the option as stated in the contract. Any changes to the options, as awarded, would necessitate a bilateral agreement. (*See Alutiiq Commercial Enterprises, LLC*, ASBCA No. 61503, 20-1 BCA ¶ 37,506 at 182,198, citations omitted).

[8] The government additionally alleges waiver through continued performance because M1 did not object to the exercise of the option until 10 days after it began performance (gov't br. at 17). We need not reach this issue.

modified performance through formal written modifications. Because there was an existing dispute regarding the exercise of the option period at the time of the bilateral modifications, the change could be evaluated as an accord and satisfaction. An accord and satisfaction occurs "when some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim." *Bell BCI Co. v. United States*, 570 F.3d 1337, 1340-41 (Fed. Cir. 2009) (quoting *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1581 (Fed. Cir. 1993)). However, here the parties twice bilaterally modified the terms of the contract to redefine the very performance that M1 challenges in its claim. The plain language of the contract, as modified, precludes M1's claim. *See, e.g., Supply & Service Team GmbH*, ASBCA No. 59630, 17-1 BCA ¶ 36,678 at 178,601.

M1 signed a bilateral modification (Modification No. 11), that extended the option period and modified the value of the option period, while providing that all other terms and conditions remained the same. "The total contract value and the total funded value for the Option to Extend Services period are hereby changed from $2,149,591 to $4,087,141.03, a total increase of $1,937,550.03" (R4, tab 27 at 849). The original amount of $2,149,591 cited in Modification No. 11 was the amount of the option to extend services in Modification No. 9 – the modification being challenged by M1 (R4, tab 22 at 768). Thus, in Modification No. 11, M1 agreed to perform the option to extend services for a price of $4,087,141.03 and that amount *included* performance of the option to extend services during the period covered by Modification No. 9. Therefore, giving effect to the clear and unambiguous language of the modification, M1 agreed to perform the entire option to extend services from June 24, 2014 to December 23, 2014, including the period of June 24, 2014 to September 23, 2014 covered by Modification No. 9, for $4,087,141.03. This constitutes an agreement resolving M1's dispute regarding the exercise of the option to extend services, and its attempt to reprice its performance of the option. Similarly, in Modification No. 12, M1 agreed to add a logistician position and agreed to a price for performance of the option to extend services from June 24, 2014 to December 23, 2014 (R4, tab 30 at 1011).

M1 cites to the Board's holding in *Alutiiq Commercial Enterprises, LLC*, 20-1 BCA ¶ 37,506, for the proposition that, at most, M1 waived its right to object to the exercise of the option, but that it did not waive the right to seek additional compensation (app. resp. at 7). According to M1, "the modifications at issue should not be 'purport[ed] to resolve' anything outside the scope of their plain language, particularly not the waiver of a right to file a claim" (*id.*) (quoting *Alutiiq*, 20-1 BCA ¶ 37,506 at 182,199). While we agree with M1 that a modification only resolves the issues within the scope of the plain language of the modification, here, Modification

No. 11[9] "resolved" the payment for the performance of the option to extend performance (R4, tab 27 at 849).

CONCLUSION

For the reasons stated above M1's appeals are denied.

Dated:  August 16, 2021

_____
DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

_____
RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

_____
OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[9] We do not address the government's arguments regarding Modification No. 10, and make no findings as to whether those modifications also constitute a waiver or accord and satisfaction.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62461, 62646, Appeals of Mission1st Group, Inc., rendered in conformance with the Board's Charter.

Dated:  August 17, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals